Argued and submitted March 14, resubmitted In Banc December 1, 1983, affirmed on appeal and cross-appeal May 9, reconsideration denied July 13, petition for review allowed August 8, 1984 (297 Or 546)
See 298 Or 375, 692 P2d 602 (1984)

## STATE OF OREGON,
*Appellant - Cross-Respondent,*

*v.*

## SALLY ANSPACH,
*Respondent - Cross-Appellant.*

## STATE OF OREGON,
*Appellant - Cross-Respondent,*

*v.*

## MATTHEW ANSPACH,
*Respondent - Cross-Appellant.*

(J81-2651, J81-2652; CA A25219)

682 P2d 786

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for appellant - cross-respondent. With him on the briefs were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

David E. Groom, Deputy Public Defender, Salem, argued the cause for respondents - cross-appellants. With him on the brief was Gary D. Babcock, Public Defender, Salem.

BUTTLER, J.

Richardson, J., dissenting.

Van Hoomissen, J., dissenting.

## BUTTLER, J.

The state appeals a pretrial order suppressing evidence obtained in the search of a residence and outbuildings in two consolidated criminal cases in which defendants were charged with manufacture and possession of marijuana. Both defendants cross-appeal from the denial of their motions to controvert the affidavit in support of the search warrant. We affirm both orders.

The supporting affidavit submitted by a police officer stated, in pertinent part:

"That on September 24, 1981, myself and Deputy Nelson Johnston of the Douglas County Sheriff's Office, while flying in a Cessna 210, identified growing marijuana plants. That I took photographs of the area in which we saw the plants. That we were flying at an altitude of 1,500 feet above sea level. That I attached hereto as exhibits "A" and "B" two of those photographs. That I have encircled in black the only residence in the vicinity. Also within the black circle is what appeared to be a smaller outbuilding. That I have encircled in red, the location of the observed marijuana plants."

The remainder of the five-page affidavit set forth the location of the property on the basis of the county assessor's map, the affiant's general knowledge and experience in the field of narcotics, including his knowledge of what tools are generally used, what stage of the year marijuana is harvested and what related items are likely to be found in residences and outbuildings on the property of those who grow marijuana.

On the motion to controvert, the trial judge accepted the officer's testimony that he was able to identify marijuana from an altitude of 1500 feet,[1] and held that the warrant on its face was sufficient to justify a search of the property, but not a search of the buildings on the property. The court, therefore, partially allowed the defendants' motion by suppressing all evidence found in a search of the buildings but not evidence seized in a search of the land.

We first address defendants' cross-appeals. They do not challenge on appeal the sufficiency of the affidavit to support the search of the real property but, rather, argue that

---

[1] The trial court found that the officer was en route to Reedsport by air and was not engaged in a general aerial search.

the trial judge should have granted their motions to controvert. They base their argument on the testimony of a "systematic botanist" that marijuana plants could not be identified accurately from an altitude of 1500 feet. However, we are bound by the trial court's findings of fact if there is evidence to support them. *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968). Officer Knight testified that he was able to identify the marijuana, because it appeared to be a darker green than the surrounding vegetation. That testimony, if believed, is sufficient evidence to support the trial court's findings. The trial court apparently believed the officer, and on defendants' cross-appeals we affirm its denial of the motions to controvert.

There is no dispute concerning the officers' authority to seize marijuana observed to be growing on defendants' property — it is contraband. On the state's appeal the question is whether the affidavit articulates sufficient facts to establish probable cause to expand the search into defendants' home. The state contends that the trial court erred in concluding that it does not.

If the affidavit is taken at face value, it establishes that from an altitude of 1500 feet the affiant saw an unidentified number of "growing marijuana plants" and that the plants were located somewhere on defendants' property. Photographs taken from that altitude were attached to the affidavit and identified by drawn circles the location of the marijuana and the location of the house. Those circles indicate that the marijuana was growing in dense forest a substantial distance from the house and that the land between the marijuana and the house was dense forest with no apparent pathways between the two. The affidavit does not state that the plants appeared to have been cultivated or that there was any indication of human activity in the area of the plants or any observable connection between the plants and the house; neither does it estimate the number of plants. The question is whether the officer's objective observations, coupled with his subjective knowledge and beliefs, support probable cause to search defendants' residence and outbuildings.

We have dealt with this general question in at least three cases. In *State v. Harp,* 48 Or App 185, 616 P2d 564, *rev den* 290 Or 171 (1980), the supporting affidavit stated that the police officer had observed "several" seven to eight foot

marijuana plants growing on a 50 acre parcel on which the defendants' house was located. From the vantage point on the road where the police officer was able to see at least one plant with his naked eye, he could also see a portion of the roof line of the house. In holding that the affidavit was sufficient on its face to authorize a search of the residence, we said:

> "* * * Reading the affidavit at issue here we find that it is reasonable to infer from the facts presented that the marijuana seen by the officer was cultivated marijuana. The defendant's house was the only residence on the property on which the marijuana was being grown. It is reasonable to infer that the marijuana was being cultivated by defendant because it was growing on his land and he lived in the only residence on that land. Those reasonable inferences give rise to a well-warranted suspicion that marijuana and paraphernalia for its cultivation, manufacture, sale and use would be found in that house. * * *" 48 Or App at 190.

*State v. Melendy,* 49 Or App 441, 619 P2d 952 (1980), was decided about two months after *Harp,* but did not cite that case. In *Melendy,* the affidavit stated: the affiant had become suspicious that there was something growing on defendant's land when he was on the premises investigating a burglary reported by the defendant, because the defendant purposely had taken him around, rather than through, an orchard that would have been the quickest and most direct route to where defendant was taking him; an informant told another officer, who had told the affiant, he had observed a large quantity of marijuana plants growing in the orchard and had taken two plants from the patch; and the informant was familiar with marijuana and had been cited for unlawful possession. A warrant was issued authorizing a search of the property, the dwelling, all outbuildings, automobiles and persons found on the property for marijuana and implements of cultivation. Marijuana was found only in the defendant's house. We stated:

> "In the present case, there is nothing in the affidavit which would create an inference that marijuana was in defendant's house. A different situation, justifying a search of the buildings, would be presented if the affidavit indicated either that some marijuana appeared to have been harvested or that the marijuana which the informant observed was ready for harvest."

In *State v. Eaton,* 60 Or App 176, 653 P2d 250 (1982), *rev den* 294 Or 460 (1983), we quoted from both *Harp* and *Melendy,* but did not deal with their apparent inconsistency. In *Eaton,* the supporting affidavit stated that: in flying over the property at an altitude of more than 500 feet, another officer had identified growing marijuana plants that were approximately 100 feet southwest of a building that appeared to be a dwelling; a greenhouse and a shed were located 75 feet southwest of the plants, and two "red roofed structures" northeast of the residence; and there were "no other structures observed in close proximity to the growing marijuana." The warrant authorized the search of the residence and all outbuildings for marijuana, evidence of its cultivation and of its cultivators. The trial court suppressed evidence seized in the search of the house and outbuildings, because the affidavit was insufficient to establish probable cause to search them.

On appeal, we reversed, relying on *Harp,* stating that the affidavit was sufficient to establish that the plants were under cultivation on defendant's land, given the existence and location of the greenhouse and outbuildings with respect to the plants. We also stated that the affiant's statements that, based on his experience over five years investigating the growing of marijuana, "upon harvesting the plants are taken indoors for drying and packing" was sufficient to draw inferences to provide probable cause to believe that evidence of crime would be found in the residence and other buildings.

Although *Harp* and *Eaton* are reasonably consistent, they appear to be inconsistent with *Melendy.* In *Harp,* the affidavit stated only that the officer had identified "several" marijuana plants growing on defendant's property, which was 50 acres, but did not state whether the plants were growing close together, whether there was any objective evidence that the plants were being cultivated or how far the plants observed were located from the residence. We attempted to read the affidavit in a "common sense, non-technical manner" and stated that it was reasonable to infer that the marijuana seen by the officer was cultivated and that, because the marijuana was growing on defendant's land, it was reasonable to infer that it was being cultivated by defendant. We concluded that those reasonable references gave rise to probable cause to believe that marijuana and paraphernalia for its cultivation, manufacture, sale and use would be found in defendant's

house located on the property. We now think we went too far in *Harp* in attempting to resolve any doubts by the preference to be accorded to warrants.

In *Melendy,* we assumed that the marijuana plants were being cultivated, because they were growing in the defendant's orchard near his house, but we held that there was nothing in the affidavit that would permit an inference to support probable cause to believe that marijuana or implements of its cultivation would be found in the defendant's home. *Melendy* may be distinguished from *Harp* in that the affidavit in *Harp* contained the statement:

> "That from my previous experience as a police officer, I know that individuals who grow marijuana in and around their residence also have items and paraphernalia for processing marijuana, such as drying pans, sifters, drying marijuana, grow lights, and other paraphernalia used in the manufacture, sale, possession and use of marijuana."

The affidavit in *Melendy* had no such statement, but we suggested that it would have been sufficient if the affidavit had indicated that some marijuana appeared to have been harvested or was ready for harvest. That suggestion, however, relates to objective observations, rather than the more subjective statements in *Harp* based on the affiant's personal knowledge derived from experience.

The affidavit in *Eaton* contained a statement similar to that in *Harp:*

> "Further, that I have been employed in law enforcement for 10 years, and it has been my experience based upon 5 years of years *[sic]* of working involving investigating the growing of marijuana, that in Southern Oregon marijuana plants need considerable cultivation including irrigation and fertilization and that the cultivator generally lives or stays in close proximity to the plants to both care for and guard them due to their high value. It is my further experience that upon harvesting the plants are taken indoors for drying and packing." 60 Or App at 179.

We concluded that the affidavit was sufficient to support a warrant to search defendant's residence and outbuildings for such evidence.

Although *Harp* and *Eaton* are distinguishable from *Melendy,* as indicated, it is not clear from any of the cases

what facts must be stated in the affidavit in order to extend the authority to search a residence or other buildings on the premises on which the marijuana is growing. *Harp* and *Eaton* assume that the affidavit must indicate that the plants are cultivated, and in each case we said that the affidavit permitted an inference that they were. *Melendy* makes it clear that, even assuming cultivation, something more is needed to justify extending the search to buildings.

■      We now hold that, under Article I, section 9, of the Oregon Constitution,[2] an affidavit must fulfill two requirements. First, it must set forth objective observations that would permit a disinterested magistrate to conclude that there is probable cause to believe that the persons residing on the premises have some relationship to the plants. Without attempting to catalogue the kind of objective observations that would be sufficient, some examples may be useful: a statement of the approximate number of plants observed, their approximate size and a description of their relationship to one another (*e.g.,* whether in rows or in a specific identifiable patch); whether the ground around them has been worked or has been watered or fertilized; whether there is an observable path between the plants and any of the buildings, or that their proximity to the residence makes it probable that the residents are aware of their presence.[3]

However, even if the affidavit fulfills that first requirement, it is not sufficient to expand the scope of the search to include the residence or other buildings on the premises. *State v. Melendy, supra.* To justify a search of those buildings, the second requirement must be met: the affidavit must contain additional facts to support probable cause to believe that marijuana or certain kinds of implements of

---

[2] We have no reason to believe the analysis would be different under the federal constitution. Defendants relied on both the Oregon and federal constitutional questions in their motions. Although it is not clear, *Harp* and *Eaton* appear to have been decided under the federal constitution; *Melendy* gives no indication of the constitutional basis for the decision.

[3] The affidavit here states that another officer had seized marijuana at the same location six or seven years earlier, suggesting, at least, that those plants could have gone to seed and that those presently observed were volunteers. It seems particularly apt here to require *some* objective observations to support the conclusion that the plants presently growing bore some relation to the residents.

cultivation or paraphernalia for processing or sale of marijuana are probably in the building to be searched. In *Harp* and *Eaton,* we held that those facts may be premised on the affiants' personal experience, if that experience supports them. In *Melendy,* we indicated that evidence that the marijuana was being harvested, or was ready for harvest, would support probable cause to search for marijuana in the house.

■     Here the affidavit stated only that the officer, from an altitude of 1500 feet, "identified growing marijuana plants." The photographs attached to the affidavit indicate that the plants were a substantial distance from the residence and that the distance between the house and the marijuana was heavily forested. There is nothing to support the conclusion that the marijuana was being cultivated or that the plants were so located, as in *Eaton* and *Melendy,* as to give rise to probable cause to believe that defendants had knowledge of their presence and were caring for them. Because the affidavit does not satisfy the first requirement, it was not sufficient to support a warrant to search the residence and buildings. To the extent that *State v. Harp, supra,* is inconsistent with this opinion, it is overruled.

Affirmed on appeal and on cross-appeal.

**RICHARDSON, J.,** dissenting.

The issue in this case is whether the search warrant affidavit contains information that supports the issuing magistrate's determination that probable cause exists to search the buildings on the property where the growing marijuana was observed. The issue is not whether the affidavit states facts which prove that the defendants possessed the growing marijuana. The majority's rejection of this search warrant and its analysis of what facts are necessary seems to address the latter issue. I conclude that the affidavit and the warrant are sufficient and therefore dissent.

In analyzing the sufficiency of a search warrant, it is well to reiterate some fundamental precepts of the analysis. In *United States v. Ventresca,* 380 US 102, 85 S Ct 741, 13 L Ed 2d 684 (1965), the Court said:

> "* * * [T]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants. * * *" 380 US at 109.

*See also State v. Tacker,* 241 Or 597, 407 P2d 851 (1965). A second important precept was reiterated in *Illinois v. Gates,* 462 US 213, 103 S Ct 2317, 76 L Ed 2d 527 (1983):

"'* * * A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.' * * * 'A grudging or negative attitude by reviewing courts toward warrants,' * * * is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; 'courts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense manner.'" 462 US at 236. (Citations omitted.)

The third ingredient of the analysis concerns the meaning of the term "probable cause" as it relates to search warrants. We have often used the term "well warranted suspicion" as synonymous with probable cause. *State v. Schroeder,* 62 Or App 331, 661 P2d 111, *rev den* 295 Or 161 (1983); *State v. Harp,* 48 Or App 185, 616 P2d 564, *rev den* 290 Or 171 (1980); *State v. Willis,* 24 Or App 409, 545 P2d 1392, *rev den* (1976); *State v. Keith,* 2 Or App 133, 465 P2d 724, *rev den* (1970). In the light of the Supreme Court's admonition in *State v. Verdine,* 290 Or 553, 624 P2d 580 (1981), the "well warranted suspicion" formulation may not be appropriate, because it focuses on suspicion rather than inferences from fact.

It is probably fruitless to pursue a search for a series of words that defines probable cause for all search questions. It is fruitful to put the phrase in context by delineating what the phrase does not entail.

ORS 131.005(11) provides:

" 'Probable cause' means that there is a substantial objective basis for believing that more likely than not an offense has been committed and a person to be arrested has committed it."

The definition of probable cause contained in ORS 131.005(11) relates to the basis for a lawful arrest. That definition is not readily transferrable to search warrant analysis. Equating the probable cause necessary for a valid search warrant with the concept of "more likely or more probable than not" makes probable cause akin to the standard of proof

necessary in formal legal proceedings. In *United States v. Hendershot,* 614 F2d 648 (9th Cir 1980), the court said:

> "* * * [T]he 'more-likely-than-not' standard is improper. It is only necessary that the affidavit enable the magistrate to conclude that it would be reasonable to seek the evidence in the place indicated by the affidavit. * * *" 614 F2d at 654.

In an extensive analysis of the probable cause construct, the Supreme Court in *Illinois v. Gates, supra,* said:

> "* * * More recently, we said that 'the *quanta* . . . of proof' appropriate in ordinary judicial proceedings are inapplicable to the decision to issue a warrant. *Brinegar [v. United States,* 338 US 160, 173, 69 S Ct 1302, 93 L Ed 2d 1879 (1949)]. Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate's decision. While an effort to fix some general, numerically precise degree of certainty corresponding to 'probable cause' may not be helpful, it is clear that 'only a probability, and not a prima facia showing, of criminal activity is the standard of probable cause.' * * *" 462 US at 235.

The cases here under review are factually indistinguishable from *State v. Eaton,* 60 Or App 176, 653 P2d 250 (1982), *rev den* 294 Or 460 (1983); *State v. Harp, supra.* The majority recognizes those precedents but overrules *Harp.* If *Harp* is rejected as binding precedent, then presumably *Eaton* was incorrectly decided. The impetus for the majority's analysis of precedent is *State v. Melendy,* 49 Or App 441, 619 P2d 952 (1980). The majority concludes that *Harp* and *Eaton* are reasonably consistent but are inconsistent with *Melendy.* It concludes that *Melendy* is the more correct formulation and proceeds to expand the rationale for that case.

There is no inconsistency between *Harp* and *Eaton* on the one hand and *Melendy* on the other. As noted in *Melendy,* there were no facts recited in the affidavit on which to base a conclusion that evidence related to marijuana growing would be found in the residence. In contrast, the affidavits in both *Harp* and *Eaton* stated that, in the affiants' experience persons who grow marijuana on their property have evidence of this enterprise in their residences or other buildings. Those additional allegations were deemed sufficient to base a reasonable conclusion that relevant evidence would be found in buildings on the property.

If any of the three cases was incorrectly decided, it was *Melendy.* The issuing magistrate in that case could reasonably have concluded that the marijuana was tended by human agency and could reasonably have concluded that persons who grow and tended marijuana would utilize their residence or outbuildings in carrying on the growing and processing of the crop.

The majority, after emasculating precedent, sets forth an analytical approach and factual examples that a reviewing court would find acceptable in this type of enforcement activity. There are now two requirements. First, the affidavit must set forth "objective observations" to show that the residents on the property have some relationship to the plants. The opinion then sets forth types of "objective observations" that are necessary; for example, that the plants are set out in rows, or that the ground is tilled, or that plants show indications of watering or fertilizing. By setting out that nonexhaustive catalog of facts, the majority has indicated to magistrates what is minimally sufficient to permit an inference that the plants are tended by human beings. It also has drawn a blueprint for persons engaged in that illicit enterprise to grow marijuana and insulate their residences from search. Each affidavit must be judged on the basis of the facts set forth, not on the basis of what a reviewing court would like to see.

Although reviewing courts may feel more secure in inferring a connection between the plants and the residents if there is objective evidence of human activity, the fact that no such activity is observed near the plants does not necessarily detract from the magistrate's conclusion that the marijuana is related to the residents. The existence of growing marijuana plants on a single piece of property containing one residence may not be sufficient to prove beyond a reasonable doubt that the residents knowingly possessed or manufactured the drugs, but it does not defy common sense to conclude that there is a probability that the plants and residents are connected.

The term "cultivated" cropped up in many of our opinions regarding searches based on growing marijuana. It is in reality a short-hand method of indicating that the plants are there and maturing by human agency. The majority gives that term prime significance in the analysis: it is necessary to

show cultivation, and cultivation can be shown by observation of relatively common agricultural techniques. But cultivation is not the relevant inquiry. It is whether the affidavit shows a probability that the plants are in some way connected with the residents of the property.

In requiring "objectively observable" facts, the majority apparently rejects as pertinent the experiences of the affiant as to how this type of illegal enterprise is carried on. Apparently, even if the majority were satisfied that the marijuana was "cultivated," there would be no "objectively observable" facts indicating that evidence of growing, processing, packaging and selling is in the buildings on the property; the second part of the majority's two-part test. The affiant's "subjective" conclusions as to what evidence probably is in the residence and outbuildings would be insufficient, according to the majority's construct. That analysis insulates the residence from search because the officers would rarely be able objectively to observe what was in the buildings from a vantage point where the marijuana plants could lawfully be seen. The experiences of the affiant as to how this type of farming is carried on is a fact and supports an inference that in this particular instance there is a probability that the residents follow the common practice. Rejecting such evidence as subjective non-fact is not supportable in reviewing a search warrant affidavit.

I agree with the majority that defendants' motions to controvert the affidavit were properly denied. I disagree with the conclusion that the affidavit is insufficient to support a search of the buildings on the property. I would leave our precedents intact and follow them; therefore, I would reverse the order suppressing evidence and remand for trial.

Van Hoomissen, J., joins in this dissent.

**VAN HOOMISSEN, J.,** dissenting.

I join in Richardson, P.J.'s, dissent.

I write separately to express my view that the trial court and the majority of this court misapprehends the standard of review in this case. In *Illinois v. Gates,* 462 US 213, 236-37, 103 S Ct 2317, 76 L Ed 2d 527 (1983), the Supreme Court stated,

"* * * we have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.' [Spinelli v. United States, 393 US 410, 419, 21 L Ed 2d 637, 89 S Ct 584 (1969)], 'A grudging or negative attitude by reviewing courts toward warrants,' [United States v. Ventresca, 380 US 102, 108, 13 L Ed 2d 684, 85 S Ct 741 (1965)], is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; 'courts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner.' *Id.,* at 109.

"If the affidavits submitted by police officers are subjected to the type of scrutiny some courts have deemed appropriate, police might well resort to warrantless searches, with the hope of relying on consent or some other exception to the Warrant Clause that might develop at the time of the search. In addition, the possession of a warrant by officers conducting an arrest or search greatly reduces the perception of unlawful or intrusive police conduct, by assuring 'the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search.' United States v. Chadwick, 433 US 1, 9[, 97 S Ct 2476, 53 L Ed 2d 538] (1977). Reflecting this preference for the warrant process, the traditional standard for review of an issuing magistrate's probable-cause determination has been that so long as the magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more. Jones v. United States, 362 US 257, 271[, 80 S Ct 725, 4 L Ed 2d 697, 78 ALR2d 233] (1960). See United States v. Harris, 403 US [573, 577-583, 91 S Ct 2075, 29 L Ed 2d 723 (1971)]. * * *."[1]

Considering the totality of the circumstances here, *Illinois v. Gates, supra,* 462 US at 238, the probable cause finding of the District Judge was not "clearly erroneous" nor

---

[1]*See Spinelli v. United States,* 393 US 410, 419, 89 S Ct 584, 21 L Ed 2d 637 (1969); *United States v. Ventresca,* 380 US 102, 109, 85 S Ct 741, 13 L Ed 2d 684 (1965); *State v. Ingram,* 251 Or 324, 329, 445 P2d 503 (1968); *State v. Tacker,* 241 Or 597, 602, 407 P2d 851 (1965).

I find it incredible that the majority opinion fails to even address the standard of review. Gates' demand for deference is not new. *Illinois v. Gates, supra,* 462 US at 238.

was it a "clear abuse of discretion." On the contrary, reading the deputy sheriff's five-page affidavit[2] in a realistic and common-sense manner, *State v. Villagran,* 294 Or 404, 415, 657 P2d 1223 (1983), the judge had a substantial basis for concluding that a search of defendants' residence would uncover evidence of wrongdoing. But, even if his conclusion was doubtful or marginal, which it was not, I would uphold it. *Illinois v. Gates, supra.*[3]

The task of a magistrate is to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place. The duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis" for concluding that probable cause existed. *Illinois v. Gates, supra,* 462 US at 238.

Probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules. Clues and evidence coming to a policeman may vary greatly in both their value and reliability. Rigid legal rules, such as those suggested by the majority here, are ill-suited to an area so rich in diversity. *Illinois v. Gates, supra,* 462 US at 232.

On the strength of the affidavit here, the issuance of a search warrant was legally correct under *State v. Harp,* 48 Or App 185, 616 P2d 564, *rev den* 290 Or 171 (1980), which was decided *before* the warrant was issued, and *State v. Eaton,* 60 Or App 176, 653 P2d 250 (1982), *rev den* 294 Or 460 (1983), which was decided *after* the warrant was issued. For that reason alone, I would dissent from the majority's holding that the judge's finding of probable cause not only was incorrect, but also lacked a "substantial basis."[4]

---

[2]The affidavit was supplemented by aerial photographs, a tax lot map and records from the Douglas County Assessor's office showing the only residence on the property.

[3]*See* n 1, *supra.*

[4]Even if the majority is correct in its conclusion that the affidavit was insufficient, I have difficulty understanding why the exclusionary rule should be applied here. The fundamental and legitimate purpose of the rule—to deter illegal *police* conduct—is frustrated in a case such as this, where the evidence was obtained pursuant to and within the scope of a warrant and there is no evidence of bad faith on the part of the police. Here, in the opinion of the majority, the *magistrate* blundered, not the

constable. Perhaps it is time to reconsider whether the exclusionary rule should be applied in such a case.

The so-called "good faith exception" to the exclusionary rule is currently under consideration by the United States Supreme Court in *United States v. Leon; Massachusetts v. Sheppard* and *Colorado v. Quintero. See also Illinois v. Gates, supra* (White, J., concurring), 462 US at 246; *Michigan v. DeFillippo,* 443 US 31, 99 S Ct 2627, 61 L Ed 2d 343 (1979); *United States v. Peltier,* 422 US 531, 95 S Ct 2313, 45 L Ed 2d 374 (1975); *United States v. Williams,* 622 F 2d 830 (5th Cir 1980).