Argued and submitted September 6, reversed December 27, 1984

STATE OF OREGON,
*Petitioner on Review,*

*v.*

SALLY ANSPACH,
*Respondent on Review.*

STATE OF OREGON,
*Petitioner on Review,*

*v.*

MATTHEW J. ANSPACH,
*Respondent on Review.*

(J81-2651, J81-2652; CA A25219; SC S30815)

692 P2d 602

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for petitioner on review. With him on the briefs were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

David E. Groom, Deputy Public Defender, Salem, argued the cause for respondents on review. With him on the brief was Gary D. Babcock, Public Defender, Salem.

ROBERTS, J.

## ROBERTS, J.

The question is whether the affidavit in support of an application for a search warrant set forth facts sufficient to establish probable cause to search defendants' home. Both the trial court and the Court of Appeals held that it did not and suppressed the evidence. We reverse.

The affidavit recited the following facts: Police officers identified growing marijuana during an aerial surveillance. The marijuana was growing on a privately owned lot of approximately 51 acres. The lot contained one residence and an outbuilding. It was surrounded on three sides by timberland owned by International Paper Corporation and on the fourth side by a river. The corporation's land did not contain any buildings. The affidavit also recited the affiant's own knowledge, gained through experience and training, that marijuana growers often store marijuana, tools and implements of its manufacture and records of its purchase or distribution in their homes. Photographs were attached showing the terrain and the relative locations of the house and the growing marijuana.

The Court of Appeals held that under Article I, section 9, of the Oregon Constitution[1] an affidavit in support of a search warrant must meet two requirements. First, it must draw some relationship between the criminal activity, in this case marijuana cultivation, and the occupants of the dwelling to be searched. Second, it must present some reason to conclude that evidence of the crime will be found in the dwelling to be searched. The court decided that the instant affidavit failed to satisfy the first requirement. According to the court, there was no support for the conclusion that defendants, the residents of the dwelling, knew of or tended the marijuana plants.

The dissent disagreed on the weight to be given to the fact that growing marijuana and the only residence coexisted

---

[1] Article I, section 9, of the Oregon Constitution provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

on the same privately owned piece of property. According to the dissent, from such a state of affairs one could conclude that there was "a probability that the plants and residents [were] connected." 68 Or App 164, 175, 682 P2d 786 (1984).

The level of certainty with which both these relationships must be drawn is known in constitutional terms as "probable cause." The level of certainty required by the Article I, section 9 mandate for probable cause is the issue we confront here.

We have found little guidance in treatises explaining the historical meaning of the term "probable cause."[2]

The state constitutions which preceded the federal constitution contained variously worded prohibitions against searches and seizures. None, however, used the phrase "probable cause."[3] The language appears for the first time in a draft

---

[2] References to probable cause in the context of justification for arrests can be found during the early development of the Anglo Saxon law of criminal procedure. One author writes that during the tenth century an indictment was required to arrest and

"[u]nless there was such an indictment, except when in hot pursuit after the * * * thief, the arrest of a suspected felon was an act of peril because if the person arrested had committed no felony, the person making the arrest was open to an action or even an 'appeal' [an accusation of felony] of false imprisonment. A plea of 'probable cause' was apparently no defense." (Footnotes omitted.) Stengel, *The Background of the Fourth Amendment to the Constitution of the United States, Part One,* 3 U Rich L Rev 278, 281 (1969).

In Lasson's work the language "probable cause" appears with reference to the writing of the English jurist Chief Justice Hale. Hale held that general warrants to search any suspected place for stolen goods were invalid. The warrants should be restricted to search in a particular place after a showing, under oath, of the suspicion and the "probable cause" thereof, to the satisfaction of the magistrate. Hale II, 150, cited in Lasson, *The History and Development of the Fourth Amendment to the United States Constitution* 33-34 (1937 repr. 1970).

[3] The Virginia clause read:

"That general warrants whereby an officer or messenger may be commanded to search suspected places without evidence of a fact committed, or to seize any person or persons not named, or whose offense is not particularly described and supported by evidence, are grievous and oppressive and ought not to be granted." Poore, II, 1909, quoted in Lasson, *supra* at 79 n 3.

The Pennsylvania provision provided:

"That the people have a right to hold themselves, their houses, papers, and possessions free from search and seizure, and therefore warrants without oaths or affirmation first made, affording a sufficient foundation for them, and whereby any officer or messenger may be commanded or required to search suspected places, or to seize any person or persons, his or their property, are contrary to that right, and ought not to be granted." Poore, II, 1542, quoted in Lasson, *supra* at 81 n 11.

bill of rights prepared by Madison in 1789 and presented to the newly formed House of Representatives.[4]

We have not often considered the level of certainty required for probable cause. When we have, we have addressed the meaning of probable cause as an interpretation of the federal Fourth Amendment. *See State v. Greene,* 285 Or 337, 591 P2d 1362 (1979) (citing *United States v. Kalama,* 549 F2d 594 (9th Cir), *cert denied* 429 US 1110, 97 S Ct 1147, 51 L Ed 2d 564 (1977) for the proposition that probable cause is a "reasonable belief" that a particular location contains evidence of a crime; *State v. Cloman,* 254 Or 1, 456 P2d 67 (1969) (holding that consideration of a suspect's criminal record and modus operandi is relevant to probable cause to arrest); *State v. Tacker,* 241 Or 597, 407 P2d 851 (1965) (quoting *United*

---

The Maryland Constitution stated:

"That all warrants, without oath or affirmation, to search suspected places, or to seize any person or property, are grievous and oppressive; and all general warrants—to search suspected places, or to apprehend suspected persons without naming or describing the place, or the person in special—are illegal and ought not to be granted." Poore, II, 819, quoted in Lasson, *supra* at n 12.

In Massachusetts, where citizen opposition to the general warrant search ran high, the constitution provided:

"Every subject has a right to be secure from all unreasonable searches and seizures of his person, his house, his papers, and all his possessions. All warrants, therefore, are contrary to this right, if the cause or foundation of them be not previously supported by oath or affirmation, and if the order in the warrant to a civil officer, to make search in suspected places, or to arrest one or more suspected persons, or to seize their property, be not accompanied with a special designation of the person or objects of search, arrest, or seizure; and no warrant ought to be issued, but in cases, and with the formalities prescribed by the laws." Poore, I, 959, quoted in Lasson, *supra* at 82 n 15.

The North Carolina prohibition read:

"That general warrants—whereby an officer or messenger may be commanded to search suspected places, without evidence of the fact committed, or to seize any person or persons, not named, whose offenses are not particularly described and supported by evidence—are dangerous to liberty, and ought not to be granted." Poore, II, 1409, quoted in Lasson, *supra* at n 13.

[4] The first draft of the federal Fourth Amendment provided:

"The rights of the people to be secured [sic] in their persons, their houses, their papers, and their other property, from all unreasonable searches and seizures, shall not be violated by warrants issued without probable cause, supported by oath or affirmation, or not particularly describing the places to be searched, or the persons or things to be seized." *Annals of Cong.,* 1st sess., p. 452, quoted in Lasson, *supra* at 100 n 77.

*States v. Ventresca,* 380 US 102, 85 S Ct 741, 13 L Ed 2d 684 (1965)).

In *State v. Villagran,* 294 Or 404, 657 P2d 1223 (1983), without indicating which constitution we were interpreting, we addressed whether facts stated in an affidavit sufficed to establish probable cause to connect a marijuana crop with a particular residence. We found two evidentiary links connecting the contraband and the house: (1) There was hearsay evidence that the person building the house searched had contracted for the construction of the barn that housed the crop. (2) The same person was listed with the Department of Motor Vehicles as currently residing at the same address as the owner of the property on which the barn stood. We decided in *Villagran* that a reasonable magistrate reading the affidavit in a common sense manner could have found probable cause to believe that evidence of the crime might be found in the location searched.

■ The issuance of search warrants is regulated in part by statute. ORS 133.545 requires that the application for a search warrant "shall be supported by one or more affidavits particularly setting forth the facts and circumstances tending to show that such things are in the places, or in the possession of the individuals, to be searched." In order to issue a search warrant the judge must find that "on the basis of the record before him, there is probable cause to believe that the search will discover things specified in the application and subject to seizure * * *." ORS 133.555(2). The legislature has not defined the term probable cause to search, as it has probable cause to arrest.[5] The Commentary to ORS 133.555(2) provides that "[s]ubsection (2) embodies the constitutional requirement of probable cause. The requirement is one of probable cause to believe that things (a) specified in the application, and (b) subject to seizure * * *, will indeed be found by the search proposed." Proposed Oregon Criminal Procedure Code § 135 (1972). This definition of probable cause as used in Oregon's statutes is not inconsistent with the constitutional standard. The probable cause requirement means that the facts upon

---

[5] ORS 131.005(11) provides:

" 'Probable cause' means that there is a substantial objective basis for believing that more likely than not an offense has been committed and a person to be arrested has committed it."

which the warrant is premised must lead a reasonable person to believe that seizable things will probably be found in the location to be searched.

■ The Court of Appeals is correct in holding that the affidavit must meet the two requirements enumerated:

> "First, it must set forth objective observations that would permit a disinterested magistrate to conclude that there is probable cause to believe that the persons residing on the premises have some relationship to the plants. * * * [Second,] the affidavit must contain additional facts to support probable cause to believe that marijuana or certain kinds of implements of cultivation or paraphernalia for processing or sale of marijuana are probably in the building to be searched." 68 Or App at 171.

We only disagree with the Court of Appeals that the facts and circumstances in this case failed to give rise to probable cause to make the first necessary connection. This is not a case where the crop and the residence are located on separately owned or publicly owned properties, or where other means of access to the crop likely are available, or where other residences are located nearby. Such circumstances would diffuse the likelihood that one particular residence would be connected to the contraband and would necessitate a stronger factual showing why one residence should become the target of a search. In such a case we well might demand the type of factual showing suggested here by the Court of Appeals, that is, an observable path between the plants and the premises, or a showing that the crop is located in close proximity to the residence.

■ Here, the affidavit stated that the officers observed marijuana while flying over the premises. Discovery of the growing plants would give the magistrate a basis to draw a reasonable inference that they were placed there and cultivated through human design. The affidavit also attested that the crop and the single residence were located on the same privately owned piece of property in an otherwise unpopulated rural area. The property was bordered on three sides by land owned by a corporation in the timber industry and it was bordered on the fourth side by a river. The photographs reveal no means of access to the property that would lead one to infer that trespassers could be responsible for the marijuana. These

facts establish the level of belief required to show probable cause to connect the marijuana crop with the residents of the house.

Reversed.