Submitted on record and briefs May 22, 1985, affirmed April 9, reconsideration denied May 23, petition for review allowed July 29, 1986 (301 Or 445)

STATE OF OREGON,
*Respondent,*

*v.*

DEBORAH ANNE COLE,
*Appellant.*

(83-1360-C; CA A33431)

717 P2d 221

Marc Kardell and Kardell's Legal Clinic, Medford, filed the brief for appellant.

Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, and Jeff Bennett, Assistant Attorney General, Salem, filed the brief for respondent.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

Buttler, P. J., dissenting.

## ROSSMAN, J.

Defendant was convicted of possession of a controlled substance, marijuana, following a consolidated stipulated facts trial involving nine similarly charged defendants after their motions to suppress were denied. On appeal, she assigns as error the trial court's denial of her motion to controvert and motion to suppress evidence seized under a warrant. We affirm.

On August 16, 1983, the Josephine County Sheriff's Department conducted a surveillance flight over portions of the county in search of growing marijuana. Sgt. Pendergrass was the spotter on board the aircraft. Flying over land belonging to defendant and her husband, Pendergrass sighted and photographed what appeared to be a greenhouse. After the flight, he prepared a standardized report, which stated the conclusion, without explanation, that there was probable cause to believe that marijuana was being cultivated on defendant's property. He delivered the report, along with the photographs and a surveyor's map, to Detective Looney, who then drafted an affidavit in support of a warrant. The affidavit is a preprinted "standard" form with blanks to be filled in by the affiant.[1] The material portions of the affidavit, with the information provided by Looney underlined, state:

"The information contained in this affidavit is based upon the police reports in this case and upon my own personal information;

"That *Alan Pendergrass,* Sergeant on the Josephine County Sheriff's Department, has reported to me that on *16 August, 1983,* he was flying over the *Coyote Creek* area of Josephine County. He further indicated that this is an F.A.A.

---

[1] Our affirmance of this case should not be interpreted as an expression of our approval of using preprinted forms for affidavits. The affidavit in this case was a printed form with blanks left for such things as the name of the spotter, the date and the location of the spotting; it included specifics such as: "He reported there were no other structures observed in close proximity to the growing marijuana."

The danger of using form affidavits is apparent in this case. The disputed passage, "he observed growing marijuana plants," is part of the standardized form and allows no opportunity for elaboration and clarification. The use of forms causes us to doubt whether the investigators are actually making individual determinations. The preferred approach would be that each case be sufficiently developed to justify a carefully prepared affidavit which delineates the facts, eliminating the possibility of vague or misleading statements. The forms detract from the dignity and accuracy of the judicial process.

regulation *500* feet minimum height flight area and that he
flew at an altitude of more than *500* feet above the ground
level and that while so doing he observed growing marijuana
plants. These plants were *located within a structure that
appears to be a greenhouse. Further, that structure is
depicted in photographs of the area taken by Sgt. Pendergrass
on 16 August, 1983, and I have reviewed those photographs. I
observed that the growing marijuana appears to be approx-
imately 200 feet from a mobile home, which appears to be the
main living quarters on the property. Other smaller sheds and
outbuildings are also visible.*

"Further that he reported there were no other structures in
close proximity to the growing marijuana.

"*Sgt. Pendergrass* has informed me that he has had
training in the identification of growing marijuana and has
participated in raids on confirmed marijuana fields.

"*Sgt. Pendergrass* has informed me that he has had *3*
years experience in aerial observations of growing marijuana
that resulted in subsequent seizures of marijuana on the
ground which was confirmed by crime laboratory analysis of
the seized marijuana.

"Further that when *Sgt. Pendergrass* observed the mari-
juana he took photographs of the marijuana from the air.
These photographs were later compared by him with a sur-
veyor's aerial photographic map obtained from the Josephine
County Surveyor's Office of the *Coyote Creek* area of
Josephine County, more specifically described as Township
*33S.*, Range *5W.*, Section *21 West* of the Willamette Merid-
ian. At this time he determined the location of the marijuana
and structures which he photographed from the air and
marked the location on the Josephine County surveyor's
aerial photograph.

"On *18 August, 1983,* I contacted the Josephine County
Assessor's Office. I requested the tax lots in the area marked
by *Sgt. Pendergrass* on the aforementioned surveyor's aerial
photographic map be drawn in by a cartographer for the
Josephine County Assessor's Office. *Vincent Lenton,* a car-
tographer for the Josephine County Assessor's Office outlined
the tax lots on the surveyor's aerial photographic map. Based
upon all the above information, I determined that the above
described marijuana and structures are located on tax lot
*1102,* T.*33S.*, R.*5W.*, Section *21 West* of the Willamette
Meridian, Josephine County, Oregon."

On the basis of that affidavit,[2] a warrant to search defendant's property was issued. The search yielded 15 marijuana plants, which were apparently found inside a greenhouse-type structure.

Defendant contends that the critical statement contained in the affidavit, that Pendergrass "observed[3] growing marijuana plants," is not supported by the evidence adduced at the hearing on the motion to controvert and that, if that statement is deleted, the affidavit does not support a finding of probable cause necessary to authorize the issuance of a warrant.

Whether an affidavit for a search warrant is true and accurate is a question of fact. *State v. Hughes,* 20 Or App 493, 496, 532 P2d 818 (1975). In this case, this issue was resolved at the hearing on the motion to controvert.[4] When factual questions arise on a motion to controvert, we are bound by the trial court's findings of fact, if there is evidence in the record to support them. *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968); *State v. Anspach,* 68 Or App 164, 167, 682 P2d 786, *reversed on other grounds* 298 Or 375, 692 P2d 602 (1984). Here, the trial court made the critical finding that "the aerial identification of growing marijuana plants was achieved."[5]

We find sufficient evidence in the record to support the trial court's finding. Although Pendergrass testified that he could not identify individual plants, he stated that he was able to determine that marijuana was in the greenhouse based

---

[2] The developed photographs were not attached to the affidavit.

[3] We treat the statement, as did the parties and the trial court, as meaning that he identified growing marijuana plants.

[4] The search warrant affidavit can be challenged by a motion to controvert which is generally used in conjunction with a motion to suppress. The procedure is controlled by ORS 133.693.

[5] The parties devote substantial portions of their briefs to a discussion of whether Looney acted in good faith. A defendant may contest the good faith of the affiant but also has the burden of proving that the affiant acted in bad faith. ORS 133.693(3) and (5). Here, defendant failed to meet that burden. The trial court found:

"The defendants have failed to show that any statements contained in the affidavits were made with reckless disregard for their truth or falsity, or were intentionally false."

However, whether or not Looney acted in good faith is of no concern in this case. Once the truthfulness of the statements in the affidavit have been determined, as they have here, the affiant's good faith becomes irrelevant.

on color, size, and configuration. Defendant did not cross-examine Pendergrass about what he meant by configuration. We cannot say as a matter of law that, merely because he could not make out individual plants, he could not tell that the greenhouse contained marijuana. The configuration of the growing material which he said he observed may have presented other clues which helped him reach his conclusion. Given this state of the record, we cannot say that the trial court could not conclude that there was probable cause to believe that marijuana was growing in the greenhouse.

We respect the dissent's position in this case. Understandably, one might question the visionary powers that Pendergrass professes to have; traditionally, these have been limited to that fabled "man of steel" from the planet Krypton. However, it is not for us to say whether the trial judge was wrong to believe Pendergrass. The trial court, because of its opportunity to view the witnesses and evidence firsthand, is clearly in a superior position to evaluate these matters. Defendant's complaint on appeal expresses mere dissatisfaction with the trial court's finding, about which we can do nothing. It is the trial judge's role, not ours, to pass on the credibility of witnesses. We affirm the findings of the trial court.

Affirmed.

**BUTTLER, P. J.,** dissenting.

The majority would require that we accept the findings of the trial court under *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968), regardless of the *sufficiency* of the evidence to support them. Here, the boilerplate portion of the affidavit stated that Sgt. Pendergrass had "observed growing marijuana plants" during an aerial surveillance. The question is whether that statement is true. Because the evidence does not support its truthfulness, I dissent.

At the hearing on defendant's motion to controvert, Pendergrass' testimony, so far as it is relevant to his observation of growing marijuana, is:

"Q. Did you fill out a report afterwards to the effect that you had probable cause to believe that marijuana was being cultivated?

"A. Yes, I did.

"Q. Did you give that to I guess it would be Mr. Looney, Sergeant Looney, thereafter for him to use in drafting his affidavit?

"A. Yes, I did.

"Q. Did the two of you discuss any of the factors involved in why you had probable cause to believe there was marijuana?

"A. I believe I told him that — basically described the place to him, showed the photographs to him, and gave him the map that the cartographers, the aerial photographs, the surveyor's map obtained from the Clerk's office.

"Q. Did you give him any other information regarding your flight over the Cole's residence?

"A. Just the fact that the location that it was in a greenhouse.

"* * * * *

"Q. You don't recall when you talked to Sergeant Looney, how long after the flight it was?

"A. I talked to Detective Looney after the flight procedure, after we have the photographs developed. On developing those photographs we then plot them on the maps that we have and then we turn that over to him. * * *

"* * * * *

"Q. To try and keep things brief, in your observation that determines that you have probable cause to believe that marijuana is being cultivated, what are the factors that you look at to make that determination?

"A. Basically configuration, color and —

"Q. What do you mean by configuration?

"A. Just the type, the outline type of thing. It's not something you can see leaves or anything specific, but you're looking at the terrain, you can differentiate the colors, you can differentiate tall trees from smaller plants, the combination of that plus the experience of seeing yourself the ability to observe the marijuana.

"Q. In this case there were — there was a greenhouse type structure, I believe is a structure that appears to be a greenhouse the way it is phrased in the affidavit. Could you see directly into that, or was there a cover over that, do you recall?

"A. My recollection, there was a cover, a plastic, appeared to be a plastic cover over that.

"Q. Could you make out any individual plants inside that plastic cover?

"A. I don't believe I could. Color, configuration and size."

On that evidence, the trial court found that the "aerial identification of growing marijuana plants was achieved." The majority states that the record supports that finding.[1] It then concludes that the trial court could "conclude that there was probable cause to believe that marijuana was growing in the greenhouse," 78 Or App at 455, which is not the issue.

In my opinion, Pendergrass' quoted testimony, even when considered with the photographs admitted in evidence, cannot support the finding that identification of growing marijuana plants was achieved. To the contrary, and to his credit, Pendergrass never stated that he had identified growing marijuana plants.[2] He was explaining, generally, how he *could* identify marijuana from the air, not that he did so in this case. That is consistent with his conclusory statement in his official report that he had probable cause to believe that marijuana was being cultivated on defendant's property. Defendant called Pendergrass as a witness. After the quoted testimony was given, the state did not pursue the witness' testimony concerning his identification of the marijuana plants. Rather, it pursued other reasons why Pendergrass may have had probable cause to believe that marijuana was growing on defendant's property. It may be that, by considering

---

[1] As the majority points out, the court also found:

"The defendants have failed to show that any statements contained in the affidavits were made with reckless disregard for their truth or falsity, or were intentionally false."

The majority states that that finding is supported by the record. Although I find it unnecessary to decide that question, I note that Looney testified that he equated the statement in Pendergrass' official report that "I have probable cause to believe marijuana is growing" with "I observed growing marijuana." Taking that at face value, it may be questionable whether the statement (preprinted) in the affidavit was made in reckless disregard for its truthfulness.

[2] When asked if he could make out any individual plants in the greenhouse, he answered: "I don't believe I could. Color, configuration and size." Even if we assume that, by that response, he meant to say that he had observed the color, configuration and size of what was growing in the greenhouse, that would be inconsistent with his clear statement that he could not see the plants in the greenhouse from over 500 feet in the air. Accordingly, by his own testimony he could not have made out their configuration and size, other than that they were not large trees. At most, taking his testimony as a whole, he could have observed their color; however, he did not say that the color, in itself, was sufficient to identify marijuana plants.

other factors, such as the location of the greenhouse (generally concealed from public view), Pendergrass thought that he had probable cause to believe that marijuana was growing on defendant's property, which is all that he stated in his report. However, the other factors were not set forth in the affidavit as they might have applied to defendant's property, and "corrected" evidence may not be considered as supporting the sufficiency of the affidavit. *State v. Harp,* 299 Or 1, 9, 697 P2d 548 (1984).

The problem arises here because Looney, the affiant, used a preprinted form that contained the statement that "_____ * * * reported to me * * * that * * * he observed growing marijuana plants." There was no other appropriate blank space in the form to set forth some other bases for Pendergrass' belief that he had probable cause to conclude that marijuana was growing on defendant's property. Accordingly, at the hearing on the motion to controvert, the only way in which the court could deny the motion was to find that the statement in question was true, not that Pendergrass may have had other reasons to support his report that he had probable cause. The record may support the latter but it does not support the former.

*Ball v. Gladden, supra,* does not require that we accept blindly a trial court finding that is not supported by sufficient evidence. In my opinion, no reasonable trier of fact could find, on this record, that "aerial identification of growing marijuana plants was achieved."

Because the statement that Pendergrass "observed growing marijuana plants" is not accurate, it must be deleted from the affidavit. After that statement has been deleted, we are left with a report of an aerial identification of a greenhouse by a police officer trained in identifying growing marijuana. That information is insufficient, as a matter of law, to conclude that there is probable cause to believe marijuana is growing inside. I would hold, therefore, that the affidavit was insufficient to support the warrant authorizing the search of defendant's property and that the trial court erred in denying defendant's motion to suppress the evidence seized.

Accordingly, I dissent.