Argued and submitted February 6, reversed and remanded July 19, 1995

## STATE OF OREGON,
*Appellant,*

*v.*

## JOHN KANSON GRIMES
## and NANCY JEAN THORNTON,
*Respondents.*

(92CR3064FE, 92CR3065FE; CA A82361)

899 P2d 1201

Jonathan H. Fussner, Assistant Attorney General, argued the cause for appellant. With him on the briefs were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Shaun S. McCrea argued the cause for respondent John Kanson Grimes. With her on the brief were Steven R. Yeager and McCrea, P.C.

John R. Parrott argued the cause and filed the brief for respondent Nancy Jean Thornton.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

RIGGS, P. J.

**RIGGS, P. J.**

The state appeals from a pretrial order suppressing evidence obtained pursuant to a search warrant. ORS 138.060(3). It argues that the search warrant affidavit established probable cause to search defendants' residence. Defendants cross-assign error to the trial court's conclusion that the confidential informant was reliable and to the denial of their motion to controvert. We reverse.

Our review of whether an affidavit is sufficient to support the issuance of a search warrant is

> " 'to determine whether a neutral and detached magistrate could conclude, based on the facts and circumstances shown by the affidavit, that there was probable cause to believe that the search would discover things specified in the affidavit in the places requested to be searched. *See* ORS 133.555(1), (2).' " *State v. Farrar*, 309 Or 132, 144-45, 786 P2d 161, *cert den* 498 US 879 (1990) (quoting *State v. Villagren*, 294 Or 404, 408, 657 P2d 1223 (1983)).

In reviewing the sufficiency of an affidavit, we give deference to the issuing magistrate, *State v. Hoffer*, 114 Or App 508, 512, 835 P2d 959, *rev den* 315 Or 272 (1992), and resolve "doubtful or marginal cases in the light of a preference for warrants." *State v. Evans*, 110 Or App 46, 51, 822 P2d 1198 (1991). We construe the affidavit "in a commonsense, nontechnical and realistic fashion." *State v. Prince*, 93 Or App 106, 112, 760 P2d 1356, *rev den* 307 Or 246 (1988). The affidavit need only establish probable cause to believe that evidence will be found at the place to be searched and does not require certainty. *State v. Anspach*, 298 Or 375, 692 P2d 602 (1984).

The affidavit first details the training and experience of the affiant, Deputy Main. The affidavit then recites that, on December 10, 1991, Main was contacted by an anonymous citizen informant (CI) who

> "has provided [Main] with narcotics information in the past that has resulted in search warrants being obtained, indoor marijuana grows seized and persons arrested for felony narcotic crimes."

The CI told Main that

> "a person known as John Grimes and his livein girlfriend, Nancy Thornton[1] were selling marijuana that they were growing indoors. [The CI] knows that they were selling marijuana because [the CI] saw Nancy Thornton[2] offer a quantity of marijuana for sale to another individual. [The CI] knows that the marijuana was from an indoor grow because [the CI] overheard Nancy Thornton state that they would have another crop ready soon and that, being that this was in December, [the CI] knew that they/she was talking about an indoor marijuana grow as the weather was too cold to grow marijuana outdoors in Douglas County in December."

The affidavit then details Main's attempts to find a residential address for either defendant. The address shown on their police and governmental records was on Stephens Street in Roseburg but, according to other sources,[3] neither defendant lived there. On January 20, 1992, the CI told Main that defendants owned a black El Camino and gave Main the license plate number. Main confirmed through DMV records that the vehicle was registered to Thornton. On January 23, Detective Robeson saw the El Camino in Roseburg and followed it to a gold mobile home behind a cafe on Highway 42. Another car registered to Thornton was also at the mobile home. On February 3, Main stopped at the market next door and asked the clerk if she knew who was living in the mobile home behind the cafe. The clerk couldn't remember their last names, but knew their first names as John and Nancy.

Main then subpoenaed the electrical records for the mobile home's address. The current customer was listed as

---

[1] Defendants Grimes and Thornton were separately indicted; however, their cases were consolidated for purposes of the motion to suppress and this appeal involves both defendants.

[2] We discuss only Thornton's activities, because they were the ones that led to the issuance of the search warrant. Grimes argues that Thornton's veracity should also be assessed, because she is an unwitting informant as to him. Grimes' argument might have validity if Thornton were not involved in the criminal activity. *See State v. Brotherton*, 123 Or App 243, 859 P2d 565 (1993). However, according to the affidavit, Grimes and Thornton were involved in the same activity and, if the affidavit is sufficient to constitute probable cause to search as to Thornton, then Thornton's status relative to Grimes is immaterial.

[3] The affidavit states: "Neither person resides at this address according to utility company and other information I was able to develop." The affiant does not further explain the "other information."

Ruby Grimes, defendant Grimes' mother. Main also obtained the electrical records for the previous four tenants. Main plotted the energy usage of the five most recent tenants, as well as plotting "heating degree days."[4] Main first noted that the highest energy consumption of any of the four previous tenants did not exceed 1600 kilowatts, and from July 1989 to April 1991, when the account was opened in Grimes' name, the usage did not exceed 800 kilowatts. After April 1991, the usage did not go below 2100 kilowatts and, at times, exceeded 3800 kilowatts. Main stated:

> "The power that is in Grimes' name * * * is extremely high, as compared to prior tenants, and rises and falls erratically in contrast to the energy needs created by the weather and as indicated by the heating degree days data.

> "Additionally, the power of Grimes reflects a three to four month rise and fall cycle which coincides with power requirements that I have seen in the past while investigating reports of indoor marijuana grows."

On the basis of the above information, as well as other information, Main obtained a search warrant.[5] The warrant was executed and defendants were charged with possession of a controlled substance, manufacture of a controlled substance, delivery of a controlled substance and maintaining a place used for keeping or selling a controlled substance. ORS 475.992; ORS 475.993. Before trial, defendants jointly moved to controvert the affidavit and to suppress any evidence that resulted from the search pursuant to the warrant. The court granted the motion to suppress because the affidavit failed to set forth particularized facts as to:

> "1.   Where was the informant when she claimed she saw Nancy Thornton offer 'a quantity' of marijuana.

---

[4] The affidavit explains that "heating degree days" is data provided by the electric company "based on both the high and low temperatures recorded daily in the Douglas County area and reflects the energy needed for such things as heat, hot water, air conditioning, lights, and those other energy uses common to households." Basically, heating degree days reflects average power usage demand due to weather conditions for any particular day.

[5] Much of the other information in the affidavit was challenged by defendants in their motion to controvert.

"2.   Who were 'they' who would have another crop ready 'soon'. In addition, there were no particularized facts establishing any basis of knowledge as to defendants' identification or relationship to each other.

"3.   Where a marijuana crop was being grown. In this regard the court relies on the cases set forth in defendant's memorandum as (a) the requirement of particularized facts to establish place-nexus; and (b) the line of cases starting with *State v. McBride, et al.*, 96 Or App 268, 773 P2d 379[, *rev den* 308 Or 184] (1989), which require that the affiant show particularized facts beyond mere high power consumption to establish that unlawful activity is occurring at the location to be searched."

We first address defendants' argument that the CI's reliability was never established, because, if defendants are correct, then the affidavit never established probable cause.

ORS 133.545(4) provides that

"[i]f an affidavit is based in whole or in part on hearsay, the affiant shall set forth facts bearing on any unnamed informant's reliability and shall disclose, as far as possible, the means by which the information was obtained."

That statute is intended to codify the former federal *Aguilar/ Spinelli* test[6] and requires affiants to set forth the basis of the informant's knowledge and facts showing the informant's veracity. *State v. Villagran,* 294 Or 404, 657 P2d 1223 (1983).

The requirement that the affidavit establish the basis of knowledge "gives the 'issuing magistrate a basis for determining the weight to give the information supplied by the informant.'" *State v. Cotter/Ray,* 125 Or App 210, 212, 864 P2d 875 (1993) (quoting *State v. Young,* 108 Or App 196, 816 P2d 612 (1991), *rev den* 314 Or 392 (1992)). In this case, the basis of the CI's knowledge was the drug transaction that he witnessed and defendant Thornton's statements. That

---

[6] When ORS 135.545 was adopted, the federal constitutional standard for determining the sufficiency of an unnamed informant was evaluated under the "two pronged test" developed in *Aguilar v. Texas*, 378 US 108, 84 S Ct 1509, 12 L Ed 2d 723 (1964) and *Spinelli v. United States*, 393 US 410, 89 S Ct 584, 21 L Ed 2d 637 (1969). The United States Supreme Court has since rejected the *Aguilar/Spinelli* test in favor of a "totality of the circumstances" test. *See Illinois v. Gates*, 462 US 213, 103 S Ct 2317, 76 L Ed 2d 527 (1983). Nevertheless, the two pronged test remains applicable in Oregon under ORS 135.545. *See State v. Christen/Hankins*, 79 Or App 774, 720 P2d 1303 (1986).

was a sufficient basis for the issuing magistrate to give weight to the CI's statements, assuming the veracity of the CI was established. *Young*, 108 Or App at 201.

An informant's veracity may be demonstrated by showing either that the informant is "credible," or that the information is "reliable." Credibility "refers to an informant's inherent and ongoing character as a person — his reputation as a truth-speaker or his demonstrated history of truthspeaking." *State v. Alvarez*, 308 Or 143, 147, 776 P2d 1283 (1989). Reliability "refers to circumstances assuring that the particular information is indeed trustworthy on a specific occasion." *Id*. The affidavit states that the CI

"has provided [Main] with narcotics information in the past that has resulted in search warrants being obtained, indoor marijuana grows seized and persons arrested for felony narcotic crimes."

Defendants argue that that information does not demonstrate any history of truth telling; the "narcotics information" may have been completely false, but still led to search warrants, seizures and arrests.

We examine affidavits in light of our admonition to "test affidavits in a common-sense, non-technical manner." *State v. Strubhar/Jackson*, 82 Or App 560, 563, 728 P2d 928 (1986), *rev den* 302 Or 657 (1987). In *Strubhar/Jackson*, the affidavit provided solely that the informant "has supplied information to me in the past that has resulted in the execution of two (2) search warrants resulting in three (3) felony arrests." We held that these facts were sufficient to establish credibility. *Id*. at 564. For the same reason, we conclude that the affidavit here is sufficient to establish the CI's credibility. *See also State v. Mellinger*, 52 Or App 21, 25-26, 627 P2d 897 (1981) (informant's credibility established by statement that the informant had "furnished information leading to several felony and numerous misdemeanor arrests").

Once the CI's veracity is established, the critical issue with this affidavit is whether there are enough facts to establish probable cause to believe that marijuana was being grown at defendants' residence. The CI's statement that Thornton said that "they would have another crop ready soon," supports an inference that Thornton and Grimes were

growing marijuana. Defendants argue, and the court below agreed, that the affiant never established who the "they" were who would have another crop ready soon. However, in reviewing the sufficiency of an affidavit, we construe it in a common-sense and realistic fashion. The "they" was not a direct quote from Thornton, but only a paraphrasing of what the affiant heard the CI say that Thornton had said. In the context of the paragraph as a whole, describing defendants' activities and repeatedly referring to defendants as "they," it is reasonably clear that "they" refers to defendants. Thus, a magistrate could conclude that defendants were the ones alleged to be growing the marijuana.

Once the affidavit established that defendants were growing marijuana, the next question is where the defendants were growing the marijuana. The CI inferred that it must be indoors "as the weather was too cold to grow marijuana outdoors in Douglas County in December." This is a reasonable inference, but the court was troubled because the affidavit did not set out where the CI was when the drug transaction took place. Once again, a common-sense reading of the affidavit, especially, the CI's statements about December in Douglas County, allows an inference that the drug transaction was a local transaction. Thus far, the affidavit allows a magistrate to infer that defendants were growing marijuana indoors. The only remaining question is whether it indicates where the marijuana was being grown. One possibility would be that defendants were growing the marijuana indoors at their own residence. In pursuing that possibility, Main first established where they lived. A detective followed her to the mobile home on Highway 42, the clerk at the market next door confirmed that a "John and Nancy" lived in the mobile home. Notwithstanding the fact that, when Main obtained the power records, they were in the name of Ruby Grimes, who Main knew was John Grimes' mother, there was sufficient information to tie defendants to the mobile home on Highway 42.

When Main reviewed the power records, they were consistent with marijuana cultivation. He compared the current residents' usage against the previous tenants; in addition, he used the heating degree days as a control to avoid disparities due to different weather. The final result of his

comparisons was an exceedingly high usage figure with variations consistent with marijuana growing. The state concedes that electric-use information is insufficient, standing alone, to provide probable cause to issue the warrant.[7] *State v. Carter/Grant*, 316 Or 6, 11, 848 P2d 599 (1993). But, when combined with the informant's information and the reasonable inferences that could be drawn therefrom, the state argues it is sufficient to establish probable cause. In the light of our preference for warrants, *Evans*, and the admonition that probable cause does not require certainty, *Anspach*, we agree. Simply put, the information from the CI, combined with the detailed electric usage information, was sufficient to allow a neutral and detached magistrate to conclude that there was probable cause to believe that marijuana was being grown at defendant's residence.[8] Accordingly, we hold that the trial court erred in suppressing the evidence that resulted from the search warrants.

Reversed and remanded.

---

[7] Main compared the current resident's usage to the previous four tenants of the same residence. Thus, there was no variability from comparing "similar" structures. In addition, Main compared all five of those tenants to the "heating degree days," which controlled for variability due to weather. This type of comparison provides much more information than a simple statement that the electric usage was "high," or a one-to-one comparison with a previous tenant.

[8] Our conclusion rests on information in the affidavit not disputed in defendants' motion to controvert. Therefore, we need not reach defendants' second cross-assignment of error concerning the court's denial of that motion.