Argued and submitted March 28, 2001, affirmed July 10, 2002

# STATE OF OREGON,
*Appellant,*

*v.*

# ROB WALLACE YUEN,
*Respondent.*

## 98CR0700; A107530

49 P3d 819

Kaye E. McDonald, Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Anne Fujita Munsey, Deputy Public Defender, argued the cause for respondent. With her on the brief was David E.

Groom, Acting Executive Director, Office of Public Defense Services.

Before Edmonds, Presiding Judge, and Deits, Chief Judge, and Kistler, Judge.

DEITS, C. J.

**DEITS, C. J.**

Defendant was charged with the one count of manufacture of a controlled substance and one count of possession of a controlled substance. ORS 475.992. Before trial, defendant moved to controvert some of the statements made in the affidavit submitted in support of a search warrant. The trial court denied the motion to controvert, and that ruling is not at issue on appeal. Defendant also moved to suppress evidence derived from the search of his residence, arguing that the affidavit in support of the search warrant did not establish probable cause to search.[1] The trial court granted the motion to suppress, and the state appeals from the resulting order.[2] ORS 138.060(3) (1997).[3] We affirm.

The principal issue in this case concerns the sufficiency of the affidavit of Sean Valdez, a deputy sheriff with the Josephine County Sheriff's Office. Valdez averred, in part:

"On August 14, 1998, Oregon State Police Trooper Ken Snook applied for and obtained a search and surveillance warrant for T37S, R5W, Section 19-1, Tax lot 508 in Josephine County, Oregon, also known as 6796 North Applegate Road. A copy of the warrant and affidavit are attached hereto as Exhibit 1."[4]

---

[1] Specifically, defendant moved for an order "suppressing all illegally seized evidence including but not limited to the following: (1) statements made by [defendant]; (2) physical evidence seized from [defendant's] residence, vehicles, tax lot 508, and 6796 N. Applegate Road; and (3) all derivative physical and oral evidence."

[2] Defendant cross-appealed. Thereafter, defendant's attorney filed a notice of abandonment of the cross-appeal, indicating that "the issue is more appropriately raised as a cross-assignment of error." However, we do not understand defendant to raise a cross-assignment of error in his brief.

[3] Although ORS 138.060(3) (1997) has been renumbered as ORS 138.060(1)(c), Or Laws 2001, ch 870, § 4, the language of that section has not changed.

[4] In Snook's affidavit, he stated that, "[o]n August 10, 1998[,] at approximately 11:50 [a.m., he] was flying in a helicopter for the purpose of spotting marijuana," which "is not indigenous to and does not grow wild" in the area, that he spotted a group of plants that he believed was marijuana, and that "[t]he quantity and quality of these marijuana plants far exceeds a personal use amount and indicates possession and growing marijuana for sale." According to Snook, he "observed three residences to be near the marijuana plants" and determined that the plants were located on a particular tax lot with the address "6796 North Applegate Road." Snook also indicated that he determined that the property was in the name of a particular individual and that driving records indicated that another individual

In his affidavit, Valdez continued:

"On August 15, 1998[,] I entered onto T37S, R5W, Section 19-1, Tax lot 508 to surveil [sic] the growing marijuana. I located the growing marijuana plants in a clearing surrounded by dense blackberry bushes. The only access to the plants was through a small tunnel cut through the * * * blackberry bushes. A copy of my report concerning this incident is attached as Exhibit 2. The marijuana plants were in black planter pots with black plastic around them.[5]

"There was a very distinct trail leading from the blackberry tunnel entrance directly to the residence at 6796 N. Applegate Road. I further observed that there were no access points from the adjoining properties to the marijuana garden. I proceeded down this trail as was able to observe the residence and outbuildings. I observed the main residence to be a brown, two story structure. The garage was on the bottom floor. During our surveillance, I heard human activity coming from the main residence, including a power saw and hammering. I also observed a vehicle parked at the main residence. I also observed a separate, brown garage-type outbuilding. Parked next to this building was a drift boat and a white/green International Scout pickup truck * * * with a white camper parked next to it. There appeared to be no activity coming from this building. The main residence and the outbuilding appear to be within 50 feet of each other and appeared to share the same common area.[6]

---

"currently reside[d]" at that address. Neither individual named by Snook was defendant. Snook indicated that "[t]he persons responsible for the marijuana plants have not yet been identified" but that, because of the close proximity of the three residences to the marijuana, one of them "is most likely responsible for the growing marijuana plants." Finally, Snook averred that, based on his training and experience, ground surveillance would likely yield evidence indicating the responsible residence and that such evidence would include paths leading to the plants.

[5] Specifically, in Valdez's incident report, he indicated that he entered the garden through a 25- to 35-foot tunnel that had been cut through the blackberry bushes. Valdez stated that he "found 15-18 live marijuana plants ranging from 3-5 feet in height. They were all in buckets, had been hand watered, and were very well taken care of." Valdez also stated that "[t]he actual size of the marijuana garden was 15 feet wide and approximately 25 feet long."

[6] Similarly, in his incident report, Valdez stated:

"[W]e found a very distinct trail leading from the garden to the residence of 6796 North Applegate Road. This trail was very well-worn, very distinct, and has been traveled on more than one occasion. The distance from the marijuana garden to the residence is approximately 50-75 meters, a very short distance.

"On August 19, 1998, I also drove by the front of 6796 N. Applegate Road. There is only one driveway to the residence and outbuilding. At the head of the driveway are two mailboxes, marked 6796A and 6796B. Also parked at the head of the driveway was a white pickup truck bearing the name 'Bob's Tree Service, [and a telephone number]' on the side. I also observed an Asian male sitting outside the truck eating lunch. Law enforcement records show this phone number belonging to [defendant], 6796 N Applegate Road * * *. Law enforcement records show the effective date of this address as 6/28/98. Law enforcement records also show a 'Willie Boat,' registered to [defendant]. I know that a 'Willie Boat' is in fact a drift boat. Oregon DMV records show a 1977 International vehicle * * * registered to [defendant] at 6796 N. Applegate Rd #B * * *. The person I saw sitting outside the 'Bob's Tree Service' truck matches the description of [defendant]. Oregon DMV records also show the current address for [defendant] * * * to be 6796 N. Applegate Road #B * * *.

"Josephine County Assessors records from 1986 and 1993 indicate the premises of 6796 N. Applegate Road to be 2.23 acres and includes a larger two-story, 864 sq. ft. dwelling with attached garage (1512 sq. ft. total), and an 832 sq. ft. outbuilding which appears to have been converted into a separate living quarters. The property has only one septic system."

According to Valdez, assessor's records "indicate[d] both structures to be rentals back in 1986 and 1993" and indicated that the property was owned by someone other than defendant. Finally, the affidavit indicated that power company records were not in defendant's name.

Before trial, defendant filed a motion to suppress, arguing that, even if the trial court denied his motion to controvert and the challenged portions of the affidavit were not excised, the search warrant affidavit "fail[ed] to establish probable cause for the issuance of a search warrant." Defendant indicated that the affidavit did not establish probable

---

"[The sergeant] instructed me to follow the trail to the residence. Once I located the residence I found a very large garage. I did not know at the time that this garage has been turned into an apartment/rental. The main residence on the property is a two-story house, brown in color, with a garage underneath."

cause to believe that he had some relationship to the growing operation and that marijuana or other evidence of the processing and sale of marijuana probably would be found in his residence. Specifically, defendant argued that "the affidavit must set forth objective observations sufficient to allow a judge to conclude there's * * * probable cause to believe there's a relationship between the person residing on the premises to be searched and the marijuana plants" and that a trail on a rural piece of property that could be connected to a residence is insufficient by itself to establish probable cause. The trial court noted that the issue in this case was whether "this trail [is] a sufficient basis to get a warrant to go into that house." The court ultimately granted the motion to suppress, noting that there were opportunities for further surveillance to establish a more significant nexus.[7] In its order, the court concluded:

> "There were not sufficient facts and circumstances in Deputy S. Valdez's [a]ffidavit to allow the [m]agistrate, who issued the [s]earch [w]arrant, to conclude there was probable cause to believe there was a relationship between the people/person residing at 6796 N. Applegate Road, #B and the marijuana garden, nor did Deputy Valdez's [a]ffidavit contain sufficient or enough facts to support probable cause to believe that marijuana, or implements of cultivation, or paraphernalia for processing or selling marijuana would be in the residence to be searched."

On appeal, the state asserts that the trial court erred in granting the motion to suppress. According to the state, "the sole issue is whether that affidavit established probable cause to believe that evidence of a crime involving the manufacture, delivery, or possession of marijuana would be located inside defendant's residence." Our examination of the legal sufficiency of an affidavit supporting a search warrant requires that we determine " '(1) whether there is reason to believe that the facts stated are true, and (2) whether the

---

[7] The state asserts that the trial court's reasoning that there were opportunities for further surveillance to establish a more significant nexus "suggests that it viewed the absence of facts in the affidavit to establish that police conducted a thorough search for other access points to the grow site to be a factor detracting from probable cause." We do not understand that the trial court relied on its observation in concluding that there was not probable cause. Rather, we understand this comment of the trial court to have been intended to be helpful advice.

facts and circumstances disclosed by the affidavit, if true, are sufficient to establish probable cause to justify the search requested.' " *State v. Goodman*, 328 Or 318, 325, 975 P2d 458 (1999) (quoting *State v. Villagran*, 294 Or 404, 408, 657 P2d 1223 (1983)).

Here, there is no dispute as to the first requirement because the trial court denied defendant's motion to controvert and the denial of that motion is not challenged on appeal. In those circumstances, we examine whether the uncontroverted facts in the affidavit establish probable cause to search defendant's residence. *See id.* ("[D]efendant did not move to controvert any of the statements in the affidavit and does not challenge them here. Accordingly, our inquiry is limited to whether the uncontroverted facts in the affidavit establish probable cause to search defendant's house."); *State v. Evoniuk/Niemi*, 80 Or App 405, 407 n 1, 722 P2d 1277 (1986) ("[B]ecause the motion to controvert was denied and that denial is not raised as error on appeal, we view the affidavit for the search warrant on the basis of information stated within its four corners.").

With regard to whether the facts and circumstances disclosed by the affidavit establish probable cause, we have recently described the settled legal principles that govern our review:

> "To be sufficient, an affidavit in support of a warrant must permit a conclusion by a neutral and detached magistrate that the items specified in the warrant will probably be found in a specified place to be searched. The standard is one of probability, which requires more than a mere possibility but less than a certainty. In testing an affidavit, a court is to construe it 'in a commonsense, nontechnical and realistic fashion looking at the facts recited and the reasonable inferences that can be drawn from those [facts].' Because of the preference for warranted searches over those conducted without prior judicial authorization, doubtful cases are to be resolved by deferring to an issuing magistrate's determination of probable cause."

*State v. Wilson*, 178 Or App 163, 166-67, 35 P3d 1111 (2001) (bracketed material in original; citations omitted). With those principles in mind, we turn to the parties' specific arguments.

The state asserts that the trial court erred in granting the motion to suppress primarily because "the court improperly characterized, or failed to consider entirely, several facts in the affidavit that permitted inferences establishing a connection between the marijuana garden and the two residences at 6796 North Applegate Road." Specifically, the state argues:

"The affidavit established that the marijuana grow was located on the same premises as those at which defendant resided; that the quality and quantity of the marijuana plants indicated that they were being raised for sale; that a very distinct trail from the concealed marijuana plants led directly to defendant's residence;[8] that the grow was located approximately 50 to 75 meters from the two buildings; that the 15 to 18 plants found at the grow site were from three to five feet high, hand watered, and well taken care of; that the plants were in black planter pots with plastic around them; that black buckets, rat poison, chicken wire, and bird wire were used in the grow; and that a tunnel had been cut through the blackberry bushes to the site of the grow. Coupled with the fact that defendant was seen at the premises near the time of the search, and considering facts setting forth the deputy's training and experience, the affidavit provided a sufficient nexus between defendant and the marijuana grow to search all of the premises authorized by the warrant, including defendant's residence."

Defendant counters:

"The only information in the affidavit connecting the marijuana garden to the place to be searched is the sentence: 'There was a very distinct trail leading from the blackberry tunnel entrance directly to the *residence* at 6796 N. Applegate Road.' (Emphasis added.) Throughout the affidavit, the larger building (Residence #A) is referred to as the 'residence,' and the smaller building (Residence #B) is referred to as the 'outbuilding.' Therefore, the plain language of the affidavit states that the trail leads directly to Residence #A. There is no reason to believe that the trail comes anywhere near Residence #B. * * *

---

[8] At oral argument, the state acknowledged that the affidavit did not establish that the trail led more closely to defendant's residence and asked that that assertion be stricken from its brief.

"* * * * *

"The fact that defendant was seen on the property and that he lives in Residence #B does not provide any support for a search of Residence #B, because there is absolutely no connection between defendant and the marijuana garden. Defendant was never seen at or near the marijuana garden or the trail leading to it. None of defendant's possessions or anything identifying defendant was found at the marijuana garden site. No one associated with defendant had any known connection with the marijuana garden. * * * This is nothing like the situation in *Goodman*, in which the defendant was video-taped at the site of a hidden marijuana garden."

(Footnote omitted.) Although the state is correct that we must examine the affidavit in its entirety, including the inferences that may be drawn from the averments, we agree with defendant that the affidavit does not establish probable cause to believe that defendant had a relationship to the marijuana garden or that marijuana or evidence of the processing and sale of marijuana would probably be found in defendant's residence.

■    In reaching our conclusion, *State v. Anspach*, 68 Or App 164, 682 P2d 786, *rev'd* 298 Or 375, 692 P2d 602 (1984), and *Goodman* are instructive. In *Anspach,* we articulated, and the Supreme Court applied, the same two-part test that the Supreme Court recently applied in *Goodman*:

"In cases involving warrants to search buildings for evidence of outdoor marijuana growing operations, the affidavit must contain facts and objective observations sufficient to permit a reasonable judge to conclude that there is probable cause to believe (1) that the residents or owners of the building have some relationship to the growing operation; and (2) that marijuana, tools, or evidence of processing and sale of marijuana probably are in the building for which the warrant is sought."

328 Or at 325. That two-part test applies regardless of whether the garden and residence are located on the same or on different premises. *Compare State v. Anspach*, 298 Or 375, 377, 692 P2d 602 (1984) (indicating that the marijuana and residence were located on the same lot), *with Goodman*, 328 Or at 320-21 (indicating that the marijuana garden was

located on forest land belonging to a particular company while the defendant resided in a nearby town at a house approximately eight and one-half miles from the garden).

In *Anspach*, we concluded that the two-part test had not been satisfied. 68 Or App at 172. In that case, because the facts and circumstances failed to establish probable cause to believe that there was some relationship between the residents of the house and the marijuana garden, the affidavit was insufficient to establish probable cause to search the residence and buildings. In particular, we described the facts that would establish a relationship between the persons residing on the premises and the garden:

> "Without attempting to catalogue the kind of objective observations that would be sufficient, some examples may be useful: a statement of the approximate number of plants observed, their approximate size and a description of their relationship to one another (*e.g.*, whether in rows or in a specific identifiable patch); whether the ground around them has been worked or has been watered or fertilized; whether there is an observable path between the plants and any of the buildings, or that their proximity to the residence makes it probable that the residents are aware of their presence."

*Id.* at 171.

In its decision in *Anspach*, however, the Supreme Court disagreed with our conclusion that the facts and circumstances failed to establish probable cause to believe that there was some relationship between the residents of the house and the marijuana garden:

> "This is not a case where the crop and the residence are located on separately owned or publicly owned properties, or where other means of access to the crop likely are available, or where other residences are located nearby. Such circumstances would diffuse the likelihood that one particular residence would be connected to the contraband and would necessitate a stronger factual showing why one residence should become the target of a search. In such a case we well might demand the type of factual showing suggested here by the Court of Appeals, that is, an observable path between the plants and the premises, or a showing that the crop is located in close proximity to the residence.

"Here, the affidavit stated that the officers observed marijuana while flying over the premises. Discovery of the growing plants would give the magistrate a basis to draw a reasonable inference that they were placed there and cultivated through human design. The affidavit also attested that the crop and *the single residence* were located on the same privately owned piece of property in an otherwise unpopulated rural area. The property was bordered on three sides by land owned by a corporation in the timber industry and it was bordered on the fourth side by a river. The photographs reveal no means of access to the property that would lead one to infer that trespassers could be responsible for the marijuana. These facts establish the level of belief required to show probable cause to connect the marijuana crop with the residents of the house."

*Anspach*, 298 Or at 381-82 (emphasis added); *see also State v. Shutvet*, 105 Or App 97, 100, 803 P2d 287 (1990), *rev den* 311 Or 427 (1991) (based on the proximity of the marijuana to *one* residence, it was reasonable to infer that the residents of that residence had some relationship to the growing operation); *State v. Royer*, 68 Or App 478, 682 P2d 283 (1984) (same).

In *Goodman*, the Supreme Court held that the affidavit established probable cause to believe that the defendant had some relationship to the garden because the "defendant was aware of the location of a well-concealed marijuana garden in a remote area, * * * he crawled through a hidden 30-foot tunnel through bushes to reach that garden, and * * * he concealed the entrance to the garden when he departed." 328 Or at 326. The Supreme Court also held that the affidavit established probable cause to believe that evidence would be found at the defendant's residence because "the facts in the affidavit [that connected] the garden to defendant and defendant to the house connect[ed] the garden to the house"; the facts in the affidavit "establishe[d] a high likelihood that evidence relating to the garden would be found in a secure indoor location," such as the defendant's residence; and the defendant's residence was located "in the vicinity of the garden." *Id*. at 327.

*Anspach*, *Goodman,* and other case law concerning whether probable cause exists to search a building for evidence of an outdoor growing operation establish three guiding principles. First, each case must be analyzed based on its

specific facts.[9] Second, the specific averments in the affidavit and the inferences that may be drawn from them can establish probable cause to believe that the residents of the building to be searched have some relationship to the growing operation even if the residents were not observed at the growing operation.[10] Finally, where there is more than one residence located near a marijuana growing operation, the likelihood that one particular residence is connected to the contraband is diffused and a stronger factual showing is necessary to demonstrate that either one of the residences or both of the residences should become the target of a search. *See Anspach*, 298 Or at 381-82.

■     Here, the affidavit, in its entirety, established that a cultivated marijuana garden that had been well cared for was located on the same small acreage and in close proximity to defendant's residence. However, the affidavit also established the following: There was another separate residence within 50 feet of defendant's residence. Each residence had a different address. Valdez heard human activity coming from that separate residence and observed a vehicle parked at that residence. Valdez also observed that a boat and pickup were parked next to "a separate, brown garage-type outbuilding," but no activity appeared to be coming from the outbuilding. Several days later, Valdez drove by the front of 6796 North Applegate Road and observed one driveway to the residence

---

[9] *See State v. Harp*, 299 Or 1, 10, 697 P2d 548 (1985) (rejecting a *per se* rule that "the co-existence of marijuana and one residence on the same privately owned parcel establish probable cause to search the residence" but noting that close proximity or a line of sight between the only residence and the marijuana could, in some cases, establish the necessary relationship between the residents of the premises to be searched and the marijuana).

[10] *Shutvet*, 105 Or App at 100 ("magistrate also had probable cause to connect the marijuana crop with the occupants of the house" based on an affidavit that (1) described "the premises as a residence located on [three and one-half] acres of land, including a detached storage shed and outbuildings abutting a large parcel of forest land owned by the Federal Bureau of Land Management," (2) indicated that the defendant had rented the house and land for approximately five years, and (3) indicated that the marijuana was growing close to the dwelling); *Royer*, 68 Or App at 480 (relationship between the residents and marijuana was established where the affidavit demonstrated that (1) the marijuana was located west of two structures, which appeared to be a residence and garage, (2) it was probable that the residents were aware of the presence of the marijuana because of the proximity of the marijuana to the residence, and (3) there were no buildings of any kind in the large area west of the defendant's residence).

and outbuilding and "two mailboxes, marked 6796A and 6796B."[11] Valdez established that the pickup and boat were registered to defendant. Valdez also established that defendant's address is 6796 North Applegate Road #B. Accordingly, it is reasonable to infer that "the residence" in the affidavit refers to 6796 North Applegate Road #A (6796A) and "the outbuilding" in the affidavit refers to 6796 North Applegate Road #B (6796B). Finally, and significantly, the affidavit indicates that "[t]here was a very distinct trail leading from the blackberry tunnel entrance directly to the residence at 6796 N. Applegate Road." In the context of the entire affidavit, that statement indicates that the trail did not lead to 6796B, defendant's residence, but, instead, led to 6796A, the other residence.

Although as noted above, the state acknowledges that the affidavit did not establish that the trail led more closely to defendant's residence, the state asserts that "[a]n affidavit may establish probable cause to believe that evidence of a crime will be found in two locations, and the facts in the affidavit in this case provided probable cause to search both residences on the property where the marijuana grow was located." *See Villagran*, 294 Or at 413 ("Indeed, the circumstances of a case may give rise to probable cause to search several different locations at the same time, particularly where, as here, the evidence sought may be at once in more than one location."). In other words, we understand the state to argue that, because the numerous cultivated marijuana plants were in close proximity to the two separate residences on a relatively small rural parcel, the two residences were in close proximity to each other, and a trail led from the entrance of the marijuana garden to 6796 North Applegate Road, there is probable cause to believe that the residents of both 6796A and 6796B had some relationship to the growing operation and that marijuana, tools, or evidence of processing and sale of marijuana probably were to be found in both residences. Although the state is correct that, under the right

---

[11] Additionally, Snook's affidavit, which was incorporated into Valdez's affidavit, states that motor vehicle records indicated that an individual other than defendant currently resided at 6796 North Applegate Road.

circumstances, probable cause can be established for two residences, we do not believe that the circumstances here support the conclusion that there was probable cause to search both residences.[12]

■      As the court indicated in *Anspach*, where there are multiple residences nearby, the likelihood that one particular residence is connected to the marijuana is diffused and a stronger factual showing is required to demonstrate that one residence should be the target of the search. Similarly, a stronger factual showing is necessary to demonstrate the reason that both residences should be targets of the search. Here, the affidavit does not establish a sufficient connection between defendant and the marijuana garden or between 6796B and the garden, nor does the affidavit establish a connection that links the two residences or their residents. According to the affidavit, 6796A and 6796B are two separate residences in close proximity to the marijuana and to each other. However, other than their physical proximity, the affidavit does not establish any connection between these residences. In addition, the affidavit indicates that more than one individual was identified as residing at 6796 North Applegate Road. Finally, the affidavit establishes that the path from the entrance to the marijuana garden leads to 6796A and not to defendant's residence.

This case is unlike *Anspach* because, in this case, there are *two* separate residences near the marijuana garden, while in *Anspach* there was only *one* residence and outbuilding on the same premises as the garden and it was reasonable to infer from the totality of the circumstances that the residents had some connection to the garden. The state contends that it is also reasonable to infer here that defendant had a connection to the garden and that, based on the physical location of defendant's house, it is reasonable to infer that he knew what was happening on the property. We do not agree that this is a reasonable inference. As noted above, other than physical proximity, the affidavit does not

---

[12] We would note that, by so concluding, we are not adopting a "most promising place" rule. We are not requiring a rank ordering of potential search sites. Instead, as explained above, we have concluded that there is nothing in the affidavit to connect defendant to the growing operation as required under *Goodman* to establish probable cause to search defendant's residence.

demonstrate any connection between defendant and the garden or his residence and the garden. In fact, the effective date of defendant's residence indicates that he had lived at this location for only a few weeks. Even giving deference to the issuing magistrate's determination of probable cause, under the circumstances of this case, we hold that the affidavit does not contain facts sufficient to establish probable cause to believe that defendant had some relationship to the growing operation; consequently, the affidavit was insufficient to establish probable cause to search defendant's residence. Accordingly, we conclude that the trial court properly granted defendant's motion to suppress evidence derived from the search of his home.

Affirmed.