108 P.3d 23 (2005)
198 Or. App. 101
CITY OF EUGENE, Respondent,
v.
Joe Manuel SILVA, Appellant.
25-02-10169; A120338.
Court of Appeals of Oregon.
Argued and Submitted June 16, 2004.
Decided March 2, 2005.
*25 Michael J. Buseman argued the cause for appellant. With him on the brief was Douglas J. Dennett, P.C., Eugene.
Craig J. Capon, Eugene, argued the cause and filed the brief for respondent.
Before LANDAU, Presiding Judge, and BREWER, Chief Judge, and ARMSTRONG, Judge.
ARMSTRONG, J.
Defendant appeals his conviction for driving under the influence of intoxicants (DUII). He assigns error to the trial court's denial of his motion to suppress evidence. We reverse and remand with instructions to permit defendant to withdraw his plea.
At about 9:00 p.m. on August 26, 2001, Officers Fellman and Lawnicki of the Eugene Police Department were dispatched separately to investigate a damaged fire hydrant. Officer Fellman was the first to find the hydrant. A vehicle had run into it and sheared it from its base. Fellman concluded from the position of the hydrant that a vehicle had left its lane of traffic, crossed the opposing lane, and struck the hydrant.
Fellman explored the area and noticed a black pickup truck parked on the street in front of a duplex residence at 359 North Seneca, 300 feet from the hydrant. Defendant's friend, Warren, resided at 359 North Seneca. 359 North Seneca is on a cul-de-sac. Fellman also saw that a fresh fluid trail led from the hydrant to the pickup. The front of the pickup had damage that looked both recent and consistent with a collision with the hydrant. The pickup's engine was warm and fluid was dripping from the front of the pickup. No other vehicles were parked on the street near the pickup.
The officers noticed that a few lights were on inside the residence at 359 North Seneca, but that "[i]t was dark inside [and] not particularly well lit" and that, although the screen door was shut, the wooden door behind it was open. Fellman ran the pickup's license plate number and learned that the Driver and Motor Vehicle Services Division listed defendant as the owner of the pickup and his address as 3804 Pepper Tree in Eugene.
Officer Lawnicki independently learned that a black pickup had struck the hydrant, that the pickup was registered to defendant, and that defendant's address was listed as 3804 Pepper Tree. Neither officer made an effort to contact defendant at that address.
Fellman and Lawnicki believed that the driver of the pickup was likely intoxicated and would be found at or near 359 North Seneca. They based that belief, in part, on their training and experience that "intoxicated drivers who have left the scenes of crashes don't go very far, at least initially, because they are impaired." The officers knocked on the screen door of 359 North Seneca and yelled to announce their presence, but they received no response. At that time, they believed that no more than 30 minutes had elapsed since the accident.
Fellman then walked from the front door to a driveway on one side of the house and continued 30 to 40 feet into the backyard of the duplex to a shed. Lawnicki remained at the front door. No fence separated the front yard from the back. Fellman used a flashlight in an attempt to see into the shed before returning to the front door. Fellman walked behind the house again, this time on a concrete path, and located the back door to the residence. The back door was open. Fellman knocked and announced his presence at the back door and received no response. He then used his flashlight to illuminate *26 a bush in the backyard. The bush was 20 feet straight back from the back door, close to a fence along the perimeter of the backyard. The flashlight illuminated defendant lying on the ground under the bush with his back to Fellman.
Defendant initially did not respond to Fellman and came out from under the bush only after Fellman said that, if defendant did not come out, he would summon a canine police unit. The officers subsequently administered several tests to defendant and asked him a number of questions, which he answered. The tests indicated that defendant was under the influence of alcohol. The officers arrested him.
Defendant was prosecuted in Eugene Municipal Court and was convicted of DUII. He appealed to the circuit court, arguing that the evidence that the officers had obtained after entering Warren's backyard should be suppressed because they had obtained it by conducting a search that violated Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution. He also argued that his statements to the police should be suppressed because he had not made them voluntarily. The court concluded:
"Although defendant had permission to be at his friend's house, and by extension, the property surrounding the house, as a guest he would have a limited expectation of privacy under these circumstances.
"* * * * *
"Even if defendant did have some limited expectation of privacy under the circumstances, the contact was justified given that the officers developed probable cause that the crime of hit and run had been committed and reasonably determined that exigent circumstances existed."[1]
The court also concluded that defendant made all his statements to the officers voluntarily and that "he consented to both field sobriety tests and the alcohol breath test after being advised of his rights." The trial court accordingly denied defendant's suppression motion. Defendant entered a conditional plea of guilty, ORS 135.335(3), and appealed his conviction to challenge the denial of his suppression motion. On appeal, he renews his arguments under Article I, section 9.
As an initial matter, the city contends that we cannot reach the merits of defendant's arguments because defendant was prosecuted for violating Eugene City Code (ECC) section 5.005, and, under ORS 221.360, he cannot appeal from the circuit court's judgment. On the merits, the city argues that (1) defendant had no privacy right that the officers violated by searching Warren's backyard; (2) even if defendant had a privacy right, Fellman's search was justified by probable cause and exigent circumstances; (3) defendant's statements to the officers were voluntarily made; (4) defendant consented to the field sobriety tests; and (5) in any event, the tests were justified by probable cause and exigent circumstances.
We begin with the jurisdictional issue. ORS 221.360 imposes a limit on a defendant's right to appeal a conviction in circuit court that is based on a violation of a city ordinance.[2]See, e.g., City of Eugene v. Lincoln, 183 Or.App. 36, 42, 50 P.3d 1253 (2002). Consequently, we would have to determine the effect of ORS 221.360 on defendant's appeal if defendant had been convicted of *27 violating ECC section 5.005. However, nothing in the record indicates that defendant was charged with or convicted of violating that provision. Indeed, the only information in the record about the statute or ordinance under which defendant was charged is found in the citation, which cites a violation of ORS 813.010. Accordingly, we are not persuaded that defendant was prosecuted for and convicted of violating ECC section 5.005. Therefore, ORS 221.360 has no bearing on the appeal in this case.[3]
On the merits, we first consider whether defendant had a privacy right under Article I, section 9, while he was in Warren's backyard. We do so because a "search or seizure must violate [a] defendant's section 9 rights before evidence obtained thereby will be suppressed[.]" State v. Tanner, 304 Or. 312, 315-16, 745 P.2d 757 (1987). Uncontested evidence in the record establishes that defendant was Warren's guest and had permission to spend the night at Warren's home. In the absence of any indication that defendant's access to Warren's backyard was restricted in some manner, we conclude that defendant had the same right to privacy in Warren's backyard, if any, that Warren had. Id. at 321, 745 P.2d 757; see also State v. Wrenn, 150 Or.App. 96, 102, 945 P.2d 608 (1997). We therefore consider whether Warren had a privacy right in his backyard.
"[I]ntrusions onto residential curtilage are deemed to be trespasses unless the entry is `privileged or [has] defendant's express or implied consent.' [State v. Ohling, 70 Or.App. 249, 252, 688 P.2d 1384, rev. den., 298 Or. 334, 691 P.2d 483 (1984).] Nevertheless, given prevailing social norms, the homeowner is presumed to have implicitly consented to entry into the front yard to approach the front door. Conversely, also given prevailing norms, such a presumption of implied consent to enter is not ascribed to other areas of the curtilage. See Ohling, 70 Or.App. at 253, 688 P.2d 1384 (`Going to the back of the house is a different matter.'). Rather, entry onto those areas is presumptively a trespass. Id.

"Nevertheless, that presumptive treatment is not necessarily conclusive: A homeowner can abrogate the presumption of implied consent to approach the front door by undertaking sufficient steps to exclude casual visitors from the front yard. See Ohling, 70 Or.App. at 253, 688 P.2d 1384. Conversely, the presumption that other invasions of the curtilage are trespasses can be overcome by evidence that the homeowner has sufficiently implicitly or explicitly invited entry. Thus, in [State v. Glines, 134 Or.App. 21, 894 P.2d 516, rev. den., 321 Or. 512, 900 P.2d 509 (1995)], the doorbell on the side entrance, coupled with the facts that that entrance was visible from the public sidewalk and was directly accessible from the common driveway, so strongly evidenced an invitation to the public to use that entry  and the defendant's concomitant expectation that the entrance would be so used  that the officers' entry was not a trespass."
State v. Somfleth, 168 Or.App. 414, 424-25, 8 P.3d 221 (2000). In Somfleth, we concluded that, "in the absence of other circumstances, the mere existence of a gate, open or otherwise, and a path traversing a backyard is insufficient to overcome the presumption that entry into the backyard is a trespass." Id. at 427, 8 P.3d 221. A trespass by the police onto the curtilage of a residence constitutes a search under Article I, section 9. Ohling, 70 Or.App. at 251, 688 P.2d 1384.
Considering the facts of this case, we conclude that they do not establish that Warren implicitly invited visitors to enter his backyard. In particular, we note that Warren's backyard was fenced from the adjoining property and that Warren's back door was not visible from his front door or any other area accessible to the public. Thus, we conclude that the officers committed a trespass *28 by entering the backyard, which means that they conducted a warrantless search by doing so. See id.
Warrantless searches are per se unreasonable unless the government establishes, by a preponderance of the evidence, that the search falls within an exception to the warrant requirement. State v. Davis, 295 Or. 227, 237, 666 P.2d 802 (1983). Probable cause accompanied by exigent circumstances is one such exception. The city argues that the search in this case falls within that exception. If it does not, the case must be remanded with instructions to grant defendant's suppression motion.
Defendant argues that the officers did not have probable cause to believe that he was at 359 North Seneca and, if they did, that they were not faced with exigent circumstances that would justify a warrantless search of the property for him. The city argues that the officers had probable cause to believe that defendant had committed the crimes of failure to perform the duties of a driver and DUII and that exigent circumstances existed to support a warrantless search for evidence of each offense. We begin with whether the officers had probable cause to believe that they would find defendant at 359 North Seneca.
The city argues that the officers had probable cause to believe that defendant was there because
"[t]here was a fresh fluid trail leading from the accident scene to defendant's black truck, which was parked directly in front of 359 North Seneca. It is common sense that if a person's vehicle is parked in front of a house, [people from the vehicle] are more likely than not to be in that house, or within the immediate vicinity of that house."
In the city's view, the fact that the pickup was parked on the street in front of 359 North Seneca is particularly important. However, the fact that the pickup was parked where it was, when assessed in light of the fact that the officers knew that defendant was registered as living at another address and that the cul-de-sac contained a number of other residences, including the other half of the duplex, does not make it especially likely that defendant was at 359 North Seneca. See State v. Yuen, 182 Or.App. 387, 399-400, 49 P.3d 819 (2002) (close proximity of marijuana plants to two different residences did not, when considered in light of the other facts of the case, support probable cause to search each residence). Although, in light of the officers' experience with intoxicated drivers, it was likely that defendant was somewhere near the pickup, there were a number of nearby residences in addition to 359 North Seneca.
Other facts indicated that it was likely that someone connected with 359 North Seneca was in the house or nearby. The house was dimly lit and the screen but not the door at the front entrance was closed. Thus, it was possible that someone was in the residence and that the person was deliberately ignoring the officers when they repeatedly knocked and announced their presence. Given where the pickup was parked, the fact that no one responded when the officers knocked and announced their presence made it more likely that defendant was at 359 North Seneca than at one of the other nearby residences. Nevertheless, considering the totality of the circumstances and the information known by the officers, we cannot say that a reasonable person would conclude that it was probable that defendant was at 359 North Seneca. Hence, the officers did not have probable cause to search 359 North Seneca for defendant. It follows that the trial court erred in denying defendant's motion to suppress.
Reversed and remanded with instructions to permit defendant to withdraw his plea, ORS 135.335(3).
NOTES
[1] We note that, under Article I, section 9, the issue is not whether defendant had a reasonable expectation of privacy but whether he had a privacy right.
[2] ORS 221.360 provides:

"In all cases involving the constitutionality of the charter provision or ordinance under which the conviction was obtained as indicated in ORS 221.359, such person shall have the right of appeal to the circuit court in the manner provided in ORS 221.359, regardless of any charter provision or ordinance prohibiting appeals from the municipal court because of the amount of the penalty or otherwise. An appeal may likewise be taken in such cases from the judgment or final order of the circuit court to the Court of Appeals in the same manner as other appeals are taken from the circuit court to the Court of Appeals in other criminal cases. Where the right of appeal in such cases depends upon there being involved an issue as to the constitutionality of the charter provision or ordinance, the decision of the appellate court shall be upon such constitutional issue only."
[3] Because the record fails to establish that defendant was prosecuted for violating a city ordinance, the title of this case, City of Eugene v. Silva, is a misnomer. ORS 221.339(5). This case is, and always has been, State of Oregon v. Silva. See City of Lake Oswego v. Mylander, 301 Or. 178, 183, 721 P.2d 433 (1986) (holding under ORS 131.025 that cities prosecute state criminal offenses on behalf of state). Nevertheless, we refer in the opinion to the city rather than the state as the prosecuting entity.