ARMSTRONG, P. J.
*343 Defendant appeals a judgment of conviction for one count of delivery of methamphetamine, ORS 475.890, and one count of possession of methamphetamine, ORS 475.894. Defendant was convicted based on evidence that the police had obtained under a search warrant. Defendant assigns error to the trial court's denial of his motion to suppress the evidence that had been obtained under the warrant. Defendant, who was a guest in the home in which the evidence was found, contends that, as a guest, the police violated his privacy interests by searching the home under an invalid warrant. The state responds that defendant did not have a privacy interest in the location in the home in which the evidence was found and that, even if defendant had such an interest, the search warrant was valid. We agree with the state that defendant lacked a protected privacy interest in the location in which the police found the evidence that defendant sought to suppress. Accordingly, the trial court did not err in denying defendant's suppression motion, and we affirm.
We review rulings on suppression motions for legal error and are bound by historical facts found by the trial court if they are supported by legally sufficient evidence. See, e.g. , State v. Koch , 267 Or. App. 322, 323, 341 P.3d 112 (2014). We draw reasonable factual inferences that are consistent with the trial court's ruling. See, e.g. , Ball v. Gladden , 250 Or. 485, 487, 443 P.2d 621 (1968).
Defendant and Eichengreen had known each other for five or six months as a result of a dating relationship that defendant had had with one of Eichengreen's roommates. However, the roommate had moved from Eichengreen's home a few months before the search that is at issue in this case. Defendant and Eichengreen had run into each other five or six times after the roommate had moved.
Defendant unexpectedly arrived at Eichengreen's home one day. Eichengreen asked defendant why he was at her house, and he told her that he was there to meet Londo to do an exchange. However, Londo was not at the house.
*344 Eichengreen did not tell defendant to come into the house, but her conduct implied that defendant could enter it: "[S]o the front door was opened and I basically just turned and went to call Mr. Londo. So, I mean, [defendant] had been [at the house] before, I suppose." Defendant followed Eichengreen into the house, and Eichengreen did not limit defendant's movements in it.
*119 Eichengreen then placed a telephone call to Londo, who eventually arrived. Eichengreen left Londo and defendant in the "spare room" in the house, and she went to the backyard.
Earlier that day, the Springfield Police Department had obtained a warrant to search Eichengreen's home for evidence of possession of methamphetamine, which warrant the police proceeded to execute. When the police entered the home under the warrant, they found Londo in the spare room and defendant outside the house standing on steps that connected the spare room to the backyard. Eichengreen was on a telephone call in the backyard-or, depending on the version of events, in a breezeway connecting the backyard to a garage-roughly 35 feet from the back steps. The police searched under the steps on which defendant had been standing and found a plastic bag containing methamphetamine. When asked by the police why he was at the house, defendant responded that he was there to pick up money from Londo to pay to have a cat spayed.
Defendant moved to suppress the methamphetamine evidence, contending that the evidence had been obtained under an invalid warrant in violation of defendant's privacy rights as a guest in the home.[1] Defendant relied on State v. Tanner , 304 Or. 312, 745 P.2d 757 (1987), in which the Supreme Court had recognized that privacy interests in homes are not limited to residents. The Tanner court gave the following illustration of the principle:
*345 "If A invites B to dinner at A's house and the police burst in on the dinner, it would be ludicrous to contend that the police have infringed upon a privacy interest of A but not upon a privacy interest of B. On the other hand, B's interest in the privacy of the house would not be as extensive as that of A. An invitation to dinner would not necessarily give B an interest in the privacy of the basement. It may also be that if B were a trespasser, B would not have a recognizable privacy interest."
Id. at 321, 745 P.2d 757 (internal citation omitted). Defendant contended that his status as a guest in Eichengreen's home gave him a protected privacy interest in the area of the home in which the police found the methamphetamine, viz. , under the back steps. Additionally, he argued that the search warrant affidavit did not establish probable cause to believe that evidence of possession of methamphetamine would be found at the home. The court disagreed with defendant's first argument, viz. , that he had a protected privacy interest in the area of the home in which the police had found the methamphetamine, and it denied his suppression motion. The court reasoned:
"With respect to the issue of the-the protected interests associated with the search, there is no dispute, as far as I understand between the parties, that [defendant] was some-in some degree-to some degree an invited guest into the home. But as Tanner does point out, an invited guest's scope of protected interest is limited depending on the context.
"In this case, the evidence is that it was Ms. [Eichengreen's] residence. [Defendant] was not a resident, neither was Mr. Londo. Any connection that [defendant] may have had was with respect to a friend or significant other [who] was no longer a resident there.
"Further, the description of the manner in which [defendant] was allowed entry into the home was from a passive, perhaps neutral, rather than, for example, an invited dinner guest as described in the Tanner case.
"Finally, it was apparently-as even [defendant] stated to [the detective], at the time was that he was going to meet Mr. Londo there to transfer $35 for a spaying *120 of a cat, [who] was not a resident of that home either. *346 "All of which supports the finding that [defendant] was an invited guest for a very limited purpose and for a very narrow scope of the property. I cannot conceive how it would have been reasonable for some level of an expected-or an expectation of protected interest that go beyond a common area that would not have included the spare room, let alone the stairs to the backyard further behind the front entry of the home where likely an exchange of $35 for the spaying of a cat would have occurred.
"In sum, even if I were to find that the search warrant was legally insufficient, given that [defendant] does not have the necessary scope of protected interest as it relates to this home, the motion is denied."
Defendant appeals, reprising the arguments that he made below. We begin with whether, for purposes of Article I, section 9, of the Oregon Constitution, defendant had a privacy interest in the area of Eichengreen's home in which the police found the methamphetamine. Among other things, Article I, section 9, protects the people's right to privacy against intrusion by the state. Privacy rights that are protected by Article I, section 9, can extend to invited guests in the home. See, e.g. , City of Eugene v. Silva , 198 Or. App. 101, 106-07, 108 P.3d 23 (2005) (concluding that overnight guest who had unlimited access to a backyard had the same privacy rights in the backyard as the resident). The scope of the Article I, section 9, privacy right depends on the reason that the person is on the property. Cf. Tanner , 304 Or. at 321, 745 P.2d 757 (distinguishing privacy rights of a dinner guest from those of a trespasser). Similarly, the scope of the privacy right is affected by the scope of the invitation to be on the property. Cf. id. (suggesting that a dinner guest might not have a privacy right in the basement of a home). The scope of an invitation to be on or to use property is inherently a fact-based inquiry that is affected by property-law principles, see State v. Howard/Dawson , 342 Or. 635, 642, 157 P.3d 1189 (2007) (recognizing that property law bears on Article I, section 9, privacy interests), and societal norms, see State v. Mast , 250 Or. App. 605, 613, 282 P.3d 916 (2012) (relying on societal norms to determine a person's privacy interests for purposes of Article I, section 9 ).
Here, the trial court found that the scope of Eichengreen's invitation to defendant to be on Eichengreen's *347 property did not extend to the area under the back steps. The trial court relied on contextual facts for its finding. First, it noted that defendant was in the home as a guest, not as a resident. Additionally, defendant did not have a close relationship with a resident there, because the person whom he had been dating no longer lived in the home. The court also noted that the invitation was extended by passive rather than active means. Finally, it noted that the purpose of the visit was to exchange money to pay to have a cat spayed. It found, based on those facts, that the scope of Eichengreen's invitation was limited and did not extend to the area under the back steps in which the police found the methamphetamine. Thus, because the scope of Eichengreen's invitation did not include that area, defendant lacked a protected privacy interest in it.
As noted, we are bound by the trial court's findings if there is legally sufficient evidence in the record to support them. We conclude that the trial court's finding on the scope of Eichengreen's invitation to defendant is supported by legally sufficient evidence, and, hence, we are bound by it. Thus, because Eichengreen's invitation to defendant did not include permission to access or use the area under the back steps, defendant lacked an Article I, section 9, privacy interest there. Because defendant did not have a protected privacy interest in that area, he does not have a basis on which to challenge the search warrant of Eichengreen's home. Hence, the trial court did not err by denying defendant's motion to suppress the evidence found under the back steps.
Affirmed.

Defendant sought to suppress other evidence found in the search of the home, including evidence found in the spare room. None of that evidence led to the discovery of other evidence or was introduced at trial, which obviates our need to consider whether the trial court erred in denying defendant's suppression motion with regard to the other evidence. See, e.g. , State v. Johnson , 153 Or. App. 535, 539, 958 P.2d 887, rev. den. , 327 Or. 554, 971 P.2d 410 (1998) (concluding that, even if trial court's denial of suppression motion was error, the error was harmless because challenged evidence had not been introduced in defendant's trial and had not led to derivative evidence).